## Pearlman, Appellant, *v.* Pittsburgh et al.

Argued March 20, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART and SCHAFFER, JJ.

*George Wharton Pepper,* with him *James A. Montgomery, Jr.,* and *H. D. Hirsh,* for appellant.—Facts extraneous to a proposal for bids on water meters and parts, such as previous award of a contract for repairs or a proposed standardization plan, are not proper elements for consideration in the determination of the lowest responsible bidder: Phila. Co. v. Pittsburgh, 253 Pa. 147; Schuck v. School Dist., 296 Pa. 408; Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Harris v. Phila., 299 Pa. 473.

The bid of the Neptune Meter Co. cannot properly be rejected as "unbalanced" or "unfair": People v. McDonough, 83 N. Y. Sup. 125.

The fact that a bid on certain repair parts is lower than the cost of manufacture does not in itself justify an inference of irresponsibility: Hibbs v. Arensberg, 276 Pa. 24; Summit Hill School Directors Removal, 289 Pa. 82; Schuck v. School Dist., 296 Pa. 408.

The reserved right to reject any and all bids does not relieve the city from the duty of awarding the contract to the lowest responsible bidder.

*Thomas M. Benner*, First Assistant City Solicitor, with him *Chas. A. Waldschmidt*, City Solicitor, for appellee.—The court will indulge the presumption that the authorities acted in good faith in awarding the contract: Douglass v. Com. ex rel., 108 Pa. 559; Com. v. Mitchell, 82 Pa. 343; Interstate Vitrified B. & P. Co. v. Phila., 164 Pa. 178, or 477; 30 Atl. 383.

In preparing its bid the Neptune Co. fixed the prices of the units and made the finished meter price conform. This involved the idea that certain of the units were put in at ridiculously low prices, thus throwing the whole bid out of balance, and was done, it is a fair inference, for the purpose of unfair competition: American Pavement Co. v. Wagner, 139 Pa. 623; Hibbs v. Arensberg, 276 Pa. 24; Wilson v. New Castle City, 301 Pa. 358.

*Lawrence D. Blair*, with him *Moorhead & Knox*, for Pittsburgh Equitable Meter Company, appellee, cited: Wilson v. New Castle City, 301 Pa. 358.

OPINION BY MR. JUSTICE WALLING, May 11, 1931:

The defendant City of Pittsburgh supplies approximately one hundred and twenty-five thousand customers with city water and is gradually changing from a flat rate to a meter system. In the furtherance of this plan the city, in the spring of 1930, enacted an ordinance making, inter alia, an appropriation, directing the proper authorities to advertise for sealed proposals "For the furnishing of 3,000, more or less, Water Me-

ters and Water Meter Parts, for the Bureau of Water." The information to prospective bidders included a proposed contract and specifications. The latter expressly invited bids for "The Keystone Model Meter, made by the Pittsburgh-Equitable Meter Company; the Trident Model Meter, made by the Neptune Meter Company; or the H. F. Model Meter, made by the Hersey Manufacturing Company; or, in the opinion of the director, their equal." An examination of the proposals disclosed that the Neptune Meter Company was lower by at least five per cent than that of any other responsible qualified bidder for the water meters and water meter parts, but the director of the department of supplies awarded the contract to the Pittsburgh-Equitable Meter Company. To prevent the execution and performance of the contract in accordance with the award, the plaintiff, Edward E. Pearlman, a taxpayer of the city, filed this bill in equity.

The case was heard upon bill, answer and testimony. The uncontroverted evidence established that the Neptune Meter Company was large, of long experience and high repute. As to that the chancellor found, inter alia, that "The Neptune meter, as well as the repair parts of the kind for which this bid was taken, was in satisfactory use to the number of 3,500,000," that "The Neptune Meter Company is financially responsible, is of good integrity and reputation, and has the skill and ability to perform the contract under the bid," and that "The Neptune Meter Company complied with all the requirements of the specifications and its meter was one upon which bids were invited." But the chancellor, approved by the court in banc, refused plaintiff the relief sought and dismissed his bill on the ground that the Neptune Meter Company's bid was unbalanced, in that for certain specified repair parts it was much below their cost and unfair. A five-year contract was specified and also that the successful bidder should supply the needed repair parts. As to certain of these the bid of

the Neptune Meter Company was much below cost.
Aside from this the bid of that company for the orig-
inal meters was lower, as above stated, by some five per
cent, than that of the company to whom the contract
was awarded. The reason given by the trial court was
insufficient. It was the policy of the Neptune Company,
in connection with furnishing water meters, to contract
for supplying repair parts at nominal cost, based doubt-
less largely on the experience that the original parts did
not wear out. The bid would not have been invalid even
had it agreed to furnish the needed repair parts free of
charge. It is a novel proposition that the bid of a per-
fectly responsible party can be ignored because it is in
whole or in part too low. There was no suggestion
either by the director or by the trial court that the Nep-
tune Company's bid as to any item was too high, hence,
in a legal sense, the bid was not unbalanced.

The statute requires that contracts be awarded to the
lowest responsible bidder and the courts hold it is for
the municipal authorities in the exercise of sound discre-
tion to determine who is such. The award of a contract
to one not prima facie the lowest bidder, however, must
rest upon a full and honest investigation of the quali-
fications, etc., of the respective bidders. As stated by
Mr. Justice KEPHART, speaking for the court, in Hibbs
et al. v. Arensberg et al., 276 Pa. 24, 29: "What the law
requires is the exercise of a sound discretion by the di-
rectors; they should call to their assistance the means
of information at hand to form an intelligent judgment.
They should investigate the bidders to learn their finan-
cial standing, reputation, experience, resources, facili-
ties, judgment, and efficiency as builders. This was not
done. The court below censures the board for omitting
this important step, but it holds, inasmuch as they had
ample knowledge of the successful bidder and the merit
of its work, the contract could be awarded. This might
do in private affairs, but will not pass when public funds
are at stake; it is not the exercise of discretion. Though

the directors were not bound in law to give the contract to the lowest bidder, who might be irresponsible, they were bound to investigate, and, if a bidder measured up to the law's requirement as a responsible party, the board could not capriciously award the contract to another." This was reaffirmed in Summit Hill School Directors Removal, 289 Pa. 82, and quoted with approval in Schuck v. School Dist. of Baldwin Twp., 296 Pa. 408, 412. In the instant case the Neptune Company, located in New York City, with over thirty years of successful experience and having furnished forty per cent of all the water meters in use in the United States, and being an admittedly capable company, has its lower bid rejected by the director on the untenable ground that he became suspicious because of the very low bid on certain repair parts, when a slight investigation would have disclosed that such was the settled policy of the company for reasons elsewhere herein stated. This was not such an investigation as the law requires before rejecting the lowest responsible bid. See Kratz et al. v. City of Allentown et al., 304 Pa. 51.

The municipal authorities having determined who is the lowest responsible bidder, discretion ends and the contract, if awarded, must be given to him. Referring to the statutory language "lowest responsible bidder," Mr. Justice Simpson, speaking for the court, in Schuck v. School District of Baldwin Twp., supra, says (page 411): "This language is mandatory, not discretionary, and if there is more than one responsible bidder, the work can be authorized only under contract with the lowest: Summit Hill School Directors, 258 Pa. 575, 580; Harris v. Phila., 283 Pa. 496; Com. v. Jones, 283 Pa. 582. There is a discretion vested in the board to determine who are and who are not responsible bidders,— a sound discretion to be exercised in a given way, as we shall point out later,—but once it is determined which of the bidders are responsible, discretion ends; the contract must be awarded, if at all, to the one of them whose

bid is lowest, though there is but a slight difference in amount between him and another bidder whom the board would like to favor. The money to be expended is public money,—a trust fund,—and, in matters of this kind, the law recognizes no right in the directors to expend any of it, however small, except for work done by the 'lowest responsible bidder.' "

Other reasons suggested by the director, in the instant case, were without merit and properly rejected by the chancellor and court in banc. For example, the director concluded that, as the Pittsburgh-Equitable Meter Company, a local plant, had installed nearly all the many thousands of water meters now in use in the city, it was desirable to have them standardized, that is, all of one make. This cannot avail. No such requirement is suggested in the specifications, and, on the contrary, bids were expressly requested on the kind of water meter made by the Neptune Company. Furthermore, it cannot be held that the city could limit the purchase of water meters to those made only by one company. To do so would stifle competition. The specifications here are, as indeed they must be, if possible, such as to afford reasonable opportunity for competition. See Carroll v. Phila., 183 Pa. 55. The term 'lowest bidder' necessarily implies that there must be a common standard open to all: Page v. King et al., 285 Pa. 153; Mazet v. Pittsburgh, 137 Pa. 548. Where the article is under a patent and can be obtained only from one source, a different rule prevails: Silsby Mfg. Co. v. Allentown, 153 Pa. 319. Again, the director suggested that meters should be bought of a local company because of the greater facility in obtaining repair parts, but space is provided by the city where a nonresident company can store such parts. Moreover, mere convenience of performance cannot be considered in the award of municipal contracts: Phila. Co. v. City of Pittsburgh, 253 Pa. 147. Another reason suggested by the director was that a contract for the repair of meters now in use had been let to the Pitts-.

burgh Company. That, however, as suggested by the trial court, was an entirely independent matter and could not be considered here. If such ground could control the awarding of municipal contracts it would nullify the wise provision requiring that they be let to the lowest responsible bidder. The action of the director, although in good faith, was so capricious as to amount to an abuse of discretion and if sanctioned would lead to a disregard of the wholesome provision of the statute. As stated by Mr. Justice Elkin, speaking for the court, in Louchheim v. Phila., 218 Pa. 100, 103: "It is obvious that such a rule would lead to a disregard of those wholesome limitations which the legislature and the courts have imposed on the awarding of contracts under the Act of 1874, and would submit this whole question to the discretion of the director. We do not doubt that the director in this instance acted in entire good faith, and did what he believed to be for the best interests of the city, but the question involved is not one of good faith on the part of the head of the department, but of power in that official in the exercise of his discretion to disregard the plain mandate of the law."

Counsel for the Pittsburgh Company urge that the bid is unbalanced, as condemned in case of Matter of Anderson, 109 N. Y. 554, because, as to some minor items of repair parts, the bid of the Neptune Company is not the lowest. Nothing appears to show any possibility that the city will suffer by reason thereof or to bring the instant case within the principle announced in the case last above cited. This seems to be an afterthought, for so far as appears it was first presented in the argument before this court. While the city reserved the right to reject any or all bids, it cannot, under the facts, legally execute the contract with the Pittsburgh-Equitable Meter Company.

The decree is reversed, plaintiff's bill is reinstated and the record is ordered remitted with directions that the lower court make the injunction permanent. Costs to be paid by the defendants.