SCIENTIFIC GAMES INTERNATIONAL, INC., Petitioner

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE, Commonwealth of Pennsylvania, Department of General Services, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 28, 2011.

Decided Nov. 30, 2011.

Reconsideration Denied Jan. 12, 2012.

Robert W. Hayes, John V. Donnelly, Abby L. Sacunas and Sarah D. Schlossberg, Philadelphia, for petitioner.

Michael C. Barrett, Senior Counsel, Harrisburg, for respondents Department of General Services and Department of Revenue.

Jayson R. Wolfgang, Jan L. Budman, II, and Holly L. Cline, Harrisburg, for respondent GTECH Corporation.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before this Court are preliminary objections filed by the Commonwealth of Pennsylvania, Department of General Services and Department of Revenue (collectively, DGS), and GTECH Corporation (GTECH)[1] in response to a two-count complaint in equity and action for declaratory relief filed by Scientific Games International, Inc. (Scientific Games).[2] Its complaint seeks specific performance of what it contends is a fully executed contract for the design, development, implementation and maintenance of a Central Computer Control System (Control System). If there is not a contract, it seeks injunctive relief to stop the rebidding of the contract until it is informed as to why it was in the "best interest" of the Commonwealth to reject all bids.

According to the complaint filed by Scientific Games,[3] the facts of this case are as follows. On July 8, 2010, DGS posted a public notice of Request for Proposal (RFP) for the design, development, implementation and maintenance of a Control System which would allow the Department of Revenue to monitor slot machines at casinos and other venues in the Common-

---

1. GTECH is an intervener in this matter.

2. Scientific Games has also filed preliminary objections to GTECH's preliminary objections.

3. Scientific Games is a Delaware corporation with its principal place of business located in Alpharetta, Georgia. It is a provider of customized gaming solutions to government-regulated and government-sponsored entities worldwide. It operates two facilities in Pennsylvania and pays taxes in Pennsylvania.

wealth. The Department of Revenue was seeking a Control System to replace the existing system presently provided by GTECH. At a pre-proposal conference, which Scientific Games and GTECH attended, DGS explained that it would evaluate the proposals on the bases of technical merit, cost and use of disadvantaged businesses.

Scientific Games and GTECH were the only companies to submit RFPs. The proposals were evaluated on a numeric score in three categories: 50% was based on the technical proposal; 30% was based on cost; and 20% was based on disadvantaged businesses. The maximum score was 1,000 points (500 for technical, 300 for cost and 200 for use of disadvantaged businesses.) Scientific Games' RFP scored over 100 points higher than GTECH's proposal, and DGS recommended that it be selected for contract negotiations. In addition to the RFPs, and among many other necessary applications, the successful offeror was required to obtain a manufacturer's license from the Pennsylvania Gaming Control Board (PGCB). Scientific Games submitted an application for its license with the PGCB on October 19, 2010. On November 23, 2010, Scientific Games received notice that it had been selected for contract negotiations. On May 2, 2011, a contract was executed by Scientific Games with written signatures by its representatives but no handwritten signatures by the Department of Revenue. Instead, on the line where a signature would ordinarily be, there was a notation "[Signature Electronically Affixed]" on each line.[4]

As the disappointed offeror, GTECH requested a debriefing and requested a complete copy of the contract with Scientific Games. GTECH then submitted a protest to the award of the contract to Scientific Games. (GTECH's contract to provide the existing Control System was scheduled to expire on June 28, 2010. Because the contract with Scientific Games was not executed until May 2, 2010, and it still did not have its manufacturer's license, Scientific Games could not implement a Control System by the expiration of GTECH's contract. The time frame within which Scientific Games could implement a system was further extended by GTECH's protest and the pending application for a manufacturer's license.) DGS sought an extension of its existing contract with GTECH, but according to Scientific Games, GTECH would only agree to an extension if DGS agreed to a substantial price increase. DGS agreed to extend the contract for another year. GTECH was also permitted to amend its protest based upon information it claimed to have received in response to an open records request.

On May 26, 2011, DGS' Deputy Secretary for Administration, James Henning (Henning), responded to GTECH's amended protest concluding that GTECH's protest should be denied as "being without merit." Henning sought additional information from Scientific Games and GTECH regarding the status of their manufacturer's licenses. Henning issued a final determination denying GTECH's protest except with respect to a small mathematical error in scoring its cost proposal, which only affected its score by 14 points. The denial of GTECH's protest was with prejudice with the exception of two issues.[5]

---

4. We note that pursuant to Section 303 of the Electronic Transactions Act, Act of December 16, 1999, P.L. 971, 73 P.S. § 2260.303(d), an electronic signature satisfies the law if a law requires a signature.

5. These issues were whether one of Scientific Games' vendors was registered as a socially-disadvantaged contractor for the type of services it would provide Scientific Games and whether Scientific Games' proposal included the costs of installing computer equipment at

Henning stressed that the rescoring was highly unlikely to change the outcome of the bidding process because Scientific Games' margin of victory was so great. As to all of GTECH's other grounds for protest, Henning found that GTECH had shown bad faith.

Rather than comply with Henning's express direction to rescore the RFPs, DGS decided to cancel Scientific Games' "RFP." By letter dated August 4, 2010, DGS informed Scientific Games of this decision. The explanation for the decision to cancel the "RFP" was that it was in the "best interests" of the Commonwealth without further explanation. (See attachment to Complaint in Equity.) The letter also noted that the "contract" was not executed by the Commonwealth and that the "RFP was not canceled due to any actions or inactions by Scientific Games."

As a result, Scientific Games filed a two-count complaint in equity and an action for declaratory relief. In those counts, it contends that:

- It has a valid contract with DGS. Under Section 521 of the Procurement Code,[6] a Commonwealth agency may cancel an RFP in the best interests of the Commonwealth only *prior to* the execution of a *contract* with the offeror, and here the contract was already executed when the *RFP* was cancelled;

- DGS gave no reasons for its cancellation. Section 521 of the Procurement Code expressly limits the right to cancel an *RFP* to circumstances where it is in

the best interests of the Commonwealth, and requires that the reasons for the cancellation or rejection shall be made part of the contract file;

- Even if the contract had not been executed, DGS lacked authority to cancel the RFP based upon GTECH's protest;

- Contracting with Scientific Games will save the Commonwealth and its taxpayers millions of dollars over the life of the contract and they would pay substantially more to continue under the current contract with GTECH;

- If they are allowed to cancel the RFP, DGS will be unfairly giving GTECH an opportunity to rebid for the Control Systems' contract even though the person statutorily delegated with responsibility for resolving its protest determined it was afforded a fair opportunity to participate in the procurement; and

- If DGS' violation of the Procurement Code is not enjoined, Scientific Games will suffer harm for which it cannot adequately be compensated in damages. DGS' violation of law and Scientific Games' rights constitutes irreparable injury. GTECH, as part of its debriefing process, was provided with information about Scientific Games' bid and contract with DGS. Going into the rebid process, GTECH would have an unfair advantage over Scientific Games because of GTECH's knowledge of the details of Scientific Games' bid.

Scientific Games requests a declaratory judgment in its favor and requests this

---

the casinos that the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101–1904, required be paid by the casinos.

6. 62 Pa.C.S. § 521 provides the following:
   **Cancellation of invitations for bids or requests for proposals**
   An invitation for bids, a request for proposals or other solicitation may be canceled, or

any or all bids or proposals may be rejected, at **any time prior to the time a contract is executed by all parties when it is in the best interests of the Commonwealth.** Bids may be rejected in part when specified in the solicitation. The reasons for the cancellation or rejection shall be made part of the contract file. (Emphasis added.)

Court to declare DGS' cancellation of the RFP invalid because it has a valid contract to perform the work, and, in the alternative, if there is not a valid contract, to enjoin the rebidding of the contract until DGS gives reasons as to why cancellation of the contract is in the "best interests" of the Commonwealth. It is not seeking any monetary damages.[7]

In response to this complaint, DGS and GTECH each filed preliminary objections[8] that are before us contending that:

- Scientific Games' complaint should be dismissed because this court lacks jurisdiction over whether there is a valid contract because sole jurisdiction lies with the Board of Claims pursuant to 62 Pa.C.S. § 1724(a);

- Scientific Games lacks standing to file its complaint pursuant to 62 Pa.C.S. § 521 because it did not meet the three requirements for the alleged contract to become effective. Specifically, the contract was not executed by the Commonwealth; PGCB did not grant Scientific Games a manufacturer's license before Scientific Games executed the contract on May 2, 2011, as required by statute, a mandatory condition precedent to the contract; and the Computer System provided by Scientific Games was not authorized to commence operations;

- Scientific Games' complaint lacks legal sufficiency because it fails to state a claim upon which relief can be granted because the Procurement Code expressly precludes the protest of a cancelled

RFP and because an adequate remedy exists at law under 62 Pa.C.S. § 1712.1; and

- Even if a contract is found to be enforceable against the Commonwealth, Scientific Games' request for relief in the form of specific performance is not an available remedy against Commonwealth agencies such as DGS. DGS and GTECH request that we dismiss Scientific Games complaint with prejudice for failure to state a claim upon which relief can be granted.

## I.

We first address DGS' and GTECH's claim that this court lacks jurisdiction and Scientific Games' complaint should be dismissed because matters involving whether a contract exists fall within the exclusive jurisdiction of the Board of Claims pursuant to 62 Pa.C.S. § 1724(a). In making this argument, DGS' relies on our decision in *Statewide Bldg. Maintenance, Inc. v. Pennsylvania Convention Center Authority,* 160 Pa.Cmwlth. 544, 635 A.2d 691, (1993), which, in turn, relied on *Shovel Transfer and Storage, Inc. v. Simpson and Pennsylvania Liquor Control Board,* 523 Pa. 235, 565 A.2d 1153 (1989), a case also involving the validity of a contract. In addressing whether the Board of Claims had exclusive jurisdiction over such matters, our Supreme Court stated:

> The Board of Claims is a body created by statute for the arbitration of contractual and certain other claims lodged

7. Scientific Games had also filed a petition for preliminary injunction seeking an order enjoining DGS from cancelling the contract and from commencing the rebid process for the Control System which was denied.

8. The standard of review for preliminary objections in the nature of a demurrer is limited; the question presented by the demurrer is whether on the facts averred, the law says

with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *MacElree v. Philadelphia Newspapers, Inc.,* 544 Pa. 117, 674 A.2d 1050 (1996). The Court's review of a purely legal question is plenary. *Department of General Services v. Limbach Company,* 862 A.2d 713 (Pa.Cmwlth.2004).

against the Commonwealth. Act of 1937, *as amended,* October 5, 1978, P.L. 1104, No. 260 § 2, 72 Pa. P.S. § 4651–1.... The statute gives the Board of Claims "exclusive jurisdiction to hear and determine claims against the Commonwealth arising from contracts hereafter *entered into* with the Commonwealth, where the amount in controversy amounts to $300.00 or more." 72 Pa. P.S. § 4651–4 (emphasis added.). A "claim ... arising from a contract" is often a dispute over the existence of the alleged contract as well as the liability flowing from it. In order for the Board of Claims to accept jurisdiction over a particular cause of action, it necessarily must determine as a factual predicate whether there is a valid contract in existence. The Board of Claims has the implicit right to decide every question which occurs in a cause of action over which it has jurisdiction.

We have construed the language of the enabling statute to mean that the Board of Claims is empowered to entertain *all contractual claims* against the Commonwealth irrespective of the type of relief sought or the fact that the Board of Claims may not have the power to grant the relief requested. (Citations omitted.) ... [W]e hold that the Board of Claims has jurisdiction to determine whether a contract has been "entered into" for purposes of the Act.

Our finding that jurisdiction of this matter lies with the Board of Claims is supported by. the fact that otherwise there would be no forum available to establish the fact of a valid contract against the Commonwealth. Since at common law sovereign immunity barred a claimant from asserting a claim against the Commonwealth based upon contract, 1 Pa.C.S. § 2310, no other forum would be available to test the validity of an alleged contract if it did not fit within the exception of the statute provided to exempt the immunity. Thus, any time the Commonwealth challenged the existence of the underlying contract, the claimant would have no forum to establish its legitimacy. The statute creating the Board of Claims would thus be construed as allowing a claimant to sue only if the Commonwealth concedes the existence of a valid contract in the first instance. We find no basis for such a limited construction.

523 Pa. at 240–241, 565 A.2d at 1155–1156. In arriving at this conclusion, the Court relied upon Sections 1 and 4 of the previous Board of Claims Act[9] which gave it exclusive jurisdiction to hear all claims against the Commonwealth arising from contracts entered into with the Commonwealth.

However, since our decision in *Statewide* and the Supreme Court's decision in *Shovel,* by the Act of December 3, 2002, P.L.

---

9. Section 1 of the Act of May 20, 1937, P.L. 728, 72 P.S. § 4651–1, provided, in relevant part:

There is hereby created an independent administrative board known as the Board of Claims, the duty of which shall be to arbitrate claims against the Commonwealth arising from contracts entered into by the Commonwealth, and to adjust and settle certain other claims against the Commonwealth formerly handled by the Auditor General and State Treasurer acting as the Board of Claims.

Section 4 of the Act of May 20, 1937, P.L. 728, 72 P.S. § 4651–4, provided, in relevant part:

§ 4651–4. Powers of board
The board of claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more.

1147, the Board of Claims Act, upon which those cases were based, was repealed and replaced by 62 Pa.C.S. §§ 1721–1726. 62 Pa.C.S. § 1724(a) now determines the Board's jurisdiction. Subsection (a) provides:

(a) **Exclusive jurisdiction.** The board shall have exclusive jurisdiction to arbitrate claims arising from all of the following:

(i) A contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies).

While subsection (a)(i) is similar to the language in Section 1 of the repealed 1937 Board of Claims Act, subsection (d) was newly added and provides the following:

(d) **Nonmonetary relief.** Nothing in this section shall preclude a party from seeking nonmonetary relief in another forum as provided by law.

Under the current Board of Claims Act then, the added language in subsection (d) provides that a party is not precluded from bringing an action in another forum if monetary relief is not sought.

■ Because Scientific Games is only seeking to validate the contract between it and DGS and is not seeking monetary damages, DGS' and GTECH's preliminary objection that Scientific Games' complaint fails for failure to bring the matter before the Board of Claims pursuant to 62 Pa.C.S. § 1724(a) is overruled. Scientific Games is

correct that pursuant to 42 Pa.C.S. § 7532, "[c]ourts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Consequently, this Court has jurisdiction to hear this matter pursuant to 62 Pa.C.S. § 1724(d) and the Declaratory Judgments Act.

## II.

■ Even if the Board does not have exclusive jurisdiction, DGS and GTECH contend that Scientific Games' declaratory judgment action should be dismissed because there is an adequate administrative remedy at law [10] under Section 1712.1 of the Procurement Code which provides, in relevant part:

(a) Right to claim.—A contractor may file a claim with the contracting officer in writing for controversies arising from a contract entered into by the Commonwealth.

(b) Filing of claim.—A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer.

DGS and GTECH contend that because Scientific Games alleges that it has a con-

---

10. Under the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541, a party may seek such relief when the grant of relief will provide the party with a clear judicial declaration of his legal rights and is appropriate where such a determination will help resolve a genuine and justiciable controversy. *Mazin v. Bureau of Professional and Occupational Affairs*, 950 A.2d 382 (Pa.Cmwlth.2008). However, relief is not available under this subchapter for a proceeding "within the exclusive jurisdiction of a tribunal other than a court" or "involving an appeal from an order of a tribunal." 42 Pa.C.S. § 7541(c). "The declaratory judgment procedure may not be used to prejudge issues that are committed for initial resolution to an administrative forum, any more than it may be used as a substitute to establish in advance the merits of an appeal from that forum." *Dept. of General Services v. Frank Briscoe Co., Inc.*, 502 Pa. 449, 459, 466 A.2d 1336, 1341 (1983).

tract, it is a contractor that has to file a claim to determine whether it was, in fact, a contractor, i.e., whether it had a valid contract. There is a certain "cheekiness" to this argument because in its DGS' Section 521 letter stating that it was going to rebid the contract in the "best interests" of the Commonwealth, it stated that *no contract existed* between the parties making Scientific Games not a contractor, but it now contends that the Section 521 letter can be appealed under Section 1712.1 of the Procurement Code.

Ignoring all that, and even assuming that Scientific Games is a contractor, it does not have to use the claim process outlined in the Section 1712.1 process for non-monetary claims, because if Section 1712.1 also required claims that involved non-monetary damages, that would mean that under Section 1724(a)(1), the Board of Claims would have to hear the matter because it hears exclusive jurisdiction claims filed under Section 1712.1. That reading, however, would make Section 1724(d) of the Procurement Code meaningless in that it provides that a party is not precluded from bringing an action in another forum to seek "nonmonetary relief in another forum". "Where the words of a statute are clear and free from ambiguity, the legislative intent is to be gleaned from those very words.... Governing presumptions are that the General Assembly intended the entire statute at issue to be effective and certain, and that the General Assembly does not intend an absurd result or one that is impossible of execution." *Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 607 Pa. 104, 124–125, 4 A.3d 610, 622 (2010).

### III.

If we have jurisdiction over this matter and there is not an adequate remedy at law, DGS then contends that Scientific Games' action should be dismissed because, among other things, it requested specific performance and specific performance cannot be ordered. In support of that position, they cite to *XPress Truck Lines, Inc. v. Pennsylvania Liquor Control Board*, 503 Pa. 399, 408, 469 A.2d 1000, 1004–05 (1983), quoting the following language:

Moreover, specific performance generally is not an appropriate remedy for breach of contract by a public body. Thus, in *People ex rel. Ryan v. Aldridge*, 83 Hun. 279, 31 N.Y.S. 920 (1894), the New York Court held that no person could be compelled by any process of law to prosecute any enterprise undertaken for purposes of his own, beyond the point at which he sees fit to discontinue the undertaking, and if he has contracted with another person to do the work and afterward refuses to have it done, the contractor is confined to an action of damages for breach. The New York Court held that such principles apply equally to public bodies. Similarly, this Court has held that specific performance is available only when there is no adequate remedy at law, i.e., when there is no method by which damages can be accurately computed or ascertained.

■ However, in the preceding paragraph, it stated the rationale for the rule stating:

The Act of May 20, 1937, P.L. 728, No. 193, was amended by the Act of October 5, 1978, P.L. 1104, No. 260, § 3, 72 P.S. § 4651–4 to give the Board of Claims "exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereinafter entered into by the Commonwealth where the amount in controversy amounts to $300.00 or more." We have consistently held that the Common-

wealth Court may not intervene in contractual disputes involving the Commonwealth by providing injunctive relief against a breach of contract. *Ezy Parks v. Larsen* [*Larson*], 499 Pa. 615, 454 A.2d 928 (1982). See *Emergency Medical Services Council, Inc. v. Department of Health,* 499 Pa. 1, 451 A.2d 206 (1982); *Clark v. Pennsylvania State Police,* 496 Pa. 310, 436 A.2d 1383 (1981). See also *Vespaziani v. Department of Revenue,* 40 Pa.Commonwealth Ct. [Pa.Cmwlth.] 54, 396 A.2d 489 (1979). These decisions are founded on the legislature's delegation of exclusive jurisdiction to hear contractual matters involving the Commonwealth to the Board of Claims, and the nature of that statute as a limited waiver of sovereign immunity. *See Ezy Parks v. Larson,* 499 Pa. at 626, 628, 454 A.2d at 934–35.

*Id.,* 503 Pa. at 407, 469 A.2d at 1004. As explained previously, this rationale is no longer apropos because the Board of Claims Act cited to in *Xpress* has been repealed and, among other things, the General Assembly in Section 1724(d) of the Procurement Code allowed a party to bring an action involving a state contract seeking relief for non-monetary claims, which would necessarily include specific performance. Of course, courts have discretion whether to grant specific performance of the contract.

## IV.

DGS and GTECH also contend that Scientific Games lacks standing because disappointed bidders have no property interest in the rejected bid. While acknowledging that Scientific Games also sued as a taxpayer, they argue that it still lacks standing because it is not seeking to vindicate the interests of taxpayers but only those of its own interests in securing the bid. This argument fails for several reasons.

■ First, Scientific Games is not bringing this action as a disappointed bidder but as a person that has a contract with DGS. A person that has a contract has a property interest and is aggrieved by the other party's refusal to fulfill its obligations under the contract. Its contention that it is entitled to reasons why it was in the best interests of the Commonwealth is also not those of a disappointed bidder. It is seeking a declaration as to whether Section 512 requires the contracting agency to give reasons why it is in the best interest of the Commonwealth to reject all bids. Moreover, there is no administrative remedy to challenge the DGS' decision to rebid because 62 Pa.C.S. § 1711.1(a) specifically provides that no appeals can be taken from a decision to rebid.[11]

Accordingly, all of the preliminary objections filed by DGS and GTECH are overruled. Scientific Games' preliminary objections to GTECH's preliminary objections are dismissed as moot.

Judges LEAVITT and BROBSON did not participate in the decision in this case.

## *ORDER*

AND NOW, this 30th day of November, 2011, the preliminary objections filed by the Department of General Services and GTECH are overruled. Scientific Games' preliminary objections to GTECH's preliminary objections are dismissed as moot. This order involves a controlling question of law as to which there is substantial ground for difference of opinion and that

---

11. We also note that Scientific Games has alleged that its contract will save the Commonwealth and its taxpayers millions of dollars over the life of the contract and they would pay substantially more to continue under the current contract with GTECH.

an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. 42 Pa. C.S.A. § 702(B).