66 A.3d 740

**SCIENTIFIC GAMES INTERNATIONAL, INC.**

v.

**COMMONWEALTH of Pennsylvania, Department of Revenue, Commonwealth of Pennsylvania, Department of General Services and GTECH Corporation.**

**Appeal of GTECH Corporation.**

**Scientific Games International, Inc.**

v.

**Commonwealth of Pennsylvania, Department of Revenue, Commonwealth of Pennsylvania, Department of General Services and GTECH Corporation.**

**Appeal of Commonwealth of Pennsylvania, Department of Revenue, Commonwealth of Pennsylvania, Department of General Services.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 2012.

Decided March 25, 2013.

176

178

Sally A. Treweek, Harrisburg, for Board of Claims, Amicus Curiae.

Stephen A. Aichele, Michael Clark Barrett, Harrisburg, Michael F. Eichert Jr., Philadelphia, David Robert Kraus, Harrisburg, for Appellant.

Jan L. Budman II, Holly Lechliter Cline, Jayson R. Wolfgang, Buchanan Ingersoll & Rooney, P.C., Harrisburg, for GTECH Corporation, Appellee.

Stephen A. Cozen, Robert William Hayes, Abby L. Sacunas, Cozen O'Connor, Philadelphia, for Scientific Games International, Inc., Appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

In this interlocutory appeal by permission, we consider the contours of the Board of Claims' exclusive jurisdiction pertaining to procurement litigation against Commonwealth agencies. More specifically, we are asked to determine whether such jurisdiction forecloses original jurisdiction proceedings in the Commonwealth Court, challenging a Commonwealth agency's cancellation of a request for proposals and seeking declaratory and injunctive relief.

## I. Background

### A. Relevant Statutory Provisions

The procurement of supplies, services, and construction for the public in Pennsylvania is governed by the Commonwealth Procurement Code.[1] Under this statutory regime, the Department of General Services ("DGS") is empowered to act as a purchasing agent for Commonwealth agencies. *See* 62 Pa.C.S. § 321(1). One method which may be available for procurement, under certain conditions, is the competitive sealed proposal process. *See id.* § 513. *See generally Pa. Associated Builders & Contractors, Inc. v. DGS*, 593 Pa. 580, 584–87, 932 A.2d 1271, 1274–76 (2007) (discussing such process and its interrelationship with the default, competitive sealed bidding process).

The Procurement Code, as substantially rewritten via 2002 amendments,[2] also contains a scheme for resolution of disputes

1. Act of May 15, 1998, P.L. 358, No. 57 § 1 (as amended, 62 Pa.C.S. §§ 101–2311).

2. *See* Act of Dec. 3, 2002, P.L. 1147, No. 142.

arising in connection with the solicitation or award of a contract, commencing with a pre-litigation process encompassing a protest procedure administered by the purchasing agency and a right of appeal to the Commonwealth Court. *See* 62 Pa.C.S. § 1711.1. For those attaining the status of contractor, the Procurement Code establishes a claim procedure before the contracting officer, subject to review in the independent administrative board known as the Board of Claims. *See id.* § 1712.1. Significantly, as well, the Procurement Code "reaffirms sovereign immunity," prescribing, with limited exceptions, that "no provision of this part shall constitute a waiver of sovereign immunity[.]" *Id.* § 1702(a); *see also* 1 Pa.C.S. § 2310 ("[T]he Commonwealth ... shall continue to enjoy sovereign immunity ... and remain immune from suit except as the General Assembly *shall specifically waive* the immunity." (emphasis added)).[3] The only exceptions in the Procurement Code pertain to the protest and claim procedures described above, and to proceedings in the Board of Claims "to the extent set forth in" the chapter pertaining to legal and contractual remedies. 62 Pa.C.S. § 1702(b).

Also of special relevance here, Section 521 of the Procurement Code allows for cancellation of solicitations by a Commonwealth agency or purchasing agent, as follows:

> An invitation for bids, a request for proposals or other solicitation may be canceled, or any or all bids or proposals may be rejected, *at any time prior to the time a contract is executed by all parties* when it is in the best interests of the Commonwealth. Bids may be rejected in part when specified in the solicitation. The reasons for the cancellation or rejection shall be made part of the contract file.

3. The authorization for the General Assembly to provide for sovereign immunity has been derived from Article I, Section 11 of the Pennsylvania Constitution. *See* PA. CONST. art. I, § 11 ("Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."). *See generally Frazier v. WCAB (Bayada Nurses, Inc.)*, 616 Pa. 592, 602, 52 A.3d 241, 247 (2012) (characterizing sovereign immunity as "fundamental pursuant to Article I, Section 11 of the Pennsylvania Constitution").

62 Pa.C.S. § 521 (emphasis added). Moreover, the right of protest is expressly cabined so as to exclude cancellations per Section 521. *See id.* § 1711.1(a) (establishing a right of protest for bidders, offerors, and certain others aggrieved in connection with the solicitation or award of a contract, "except as provided in section 521 (relating to cancellation of invitations for bids or requests for proposals)").

The 2002 amendments to the Procurement Code also reconstituted the Board of Claims,[4] *see* 62 Pa.C.S. § 1721(a), and reposited "exclusive jurisdiction" in that tribunal to arbitrate claims arising from contracts entered into by Commonwealth agencies in accordance with the Procurement Code, *id.* § 1724(a)(1). Of particular significance to the present appeal, the pertinent section also contains the following proviso:

(d) **Nonmonetary relief.**—Nothing in this section shall preclude a party from seeking nonmonetary relief in another forum as provided by law.

*Id.* § 1724(d).

## B. Factual and Procedural Background

In 2010, DGS, on behalf of the Department of Revenue, issued a request for proposals for design, development, implementation, and maintenance of a computer control system to monitor slot machines at gaming venues across the Commonwealth. *See* 62 Pa.C.S. § 513(b).[5] The plan was to replace an existing system which had been provided by Intervenor/Appellant, GTECH Corporation (with the Department of Revenue and DGS, collectively, "Appellants"). GTECH and Appellee, Scientific Games International, Inc. ("SGI"), each submitted proposals, and DGS selected SGI for the award and proceeded with contract negotiations. *See id.* § 513(g).

---

**4.** *See* Act of Dec. 3, 2002, P.L. 1147, No. 142 (*inter alia,* adding 62 Pa.C.S. §§ 1721–1726, to replace the former Board of Claims Act).

**5.** Under the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101–1904 (the "Gaming Act"), the Department of Revenue is the Commonwealth agency charged with the responsibility for controlling and monitoring gaming operations. *See* 4 Pa.C.S. § 1323(a).

Several months later, an agreement on contract terms was reached. Draft contract documents were exchanged between DGS and SGI, and DGS's Office of Chief Counsel transmitted a final draft to SGI. The signature document (denominated the "cover contract") contained execution signature lines for SGI and the Secretary or designee of the Department of Revenue; a general-approval signature line for the Commonwealth Comptroller; and signature lines to reflect the approval as to the form and legality of the documents of the Offices of Chief Counsel, General Counsel, and Attorney General. Above each of the lines for Commonwealth-agency signatures was the notation: "[Signature Affixed Electronically]," and corresponding date lines were not completed.[6] Complaint in Equity and Action for Declaratory Relief ("Complaint"), Ex. A. An electronic cover memorandum indicated as follows:

> Please confirm that all of the documents are accurate. If so, please sign the Cover Contract and mail the original to me and email a scanned version for us to enter into our contracting system to route for Commonwealth signatures. *It will likely take at least 60 days [to] get all of the required Commonwealth signatures.*

Petition for Preliminary Injunction, Ex. D (emphasis added). SGI returned a signature page executed by its president, along with the following observation: "As you confirmed, the

---

**6.** Per the Uniform Electronic Transactions Act, 73 P.S. §§ 2260.101–2260.503, "[i]f a law requires a signature, an electronic signature satisfies the law." 73 P.S. § 2260.303(d). Notably, however, unless otherwise provided by law, the effect of an electronic signature is determined by the context and surrounding circumstances at the time of its creation, execution or adoption. *Id.* § 2260.305(b).

While issues concerning the effect of the notation "[Signature Affixed Electronically]" have limited bearing on the jurisdictional matter presented here, the circumstances related in the text of our opinion below certainly appear to have bearing on various collateral suggestions by SGI that the notation should be taken as evincing execution of the contract on behalf of the Commonwealth. *Compare* Brief for SGI at 9, 10, 33–34 ("It cannot reasonably be disputed that 'signature affixed electronically' was typed into every signature line of the written agreement when it was delivered to SGI and that this had the same force and effect as hand-signing the document under the Electronic Signatures Act."), *with infra.*

Commonwealth will affix the necessary signatures electronically and send a fully executed copy back to [SGI]." *Id.*, Ex. E.

The Commonwealth signature and approval process proceeded at least to the stage of development where the cover contract was signed by the Secretary of the Department of Revenue, but the documents were not yet approved as to form and legality by the Offices of General Counsel and Attorney General. In terms of the effectiveness of the contract documents, a contract term was that SGI "must be granted a manufacturer's license from the [Gaming Control] Board as a condition precedent to the commencement of this Contract." IT Contract Terms and Conditions ¶ 1(d).[7]

GTECH was informed that the contract had been awarded to SGI and submitted a protest in May 2011. *See* 62 Pa.C.S. § 1711.1(b). Two months later, DGS's Deputy Secretary for Administration issued a final determination denying GTECH's protest, in material part, with prejudice. *See id.* § 1711.1(f). GTECH appealed from the determination, *see id.* § 1711.1(g), and requested, among other things, that the request for proposals be cancelled.

In August 2011, DGS announced that it was canceling the request for proposals per Section 521, as well as any associated award.[8] DGS sent a letter to SGI indicating, with little elaboration, that the cancellation was in the best interests of the Commonwealth. *See* N.T., Oct. 3–4.2011, Ex. P–024. The letter also indicated that, although the contract document had been signed by SGI, it had not been executed by the Common-

7. Per the Gaming Act, a person seeking to manufacture equipment associated with slot machines must obtain a manufacturer's license from the Gaming Control Board. *See* 4 Pa.C.S. § 1317.1(a). It is undisputed that, at all relevant times, SGI did not possess such a license.

8. Parenthetically, reasons identified by DGS for the cancellation were memorialized in a memorandum to the contract file. The document indicated that DGS had determined that certain requirements and evaluation criteria were not clearly described in the solicitation documents, and the Commonwealth wished to reevaluate the most appropriate method of procurement for the project. SGI, however, maintains that the cancellation actually was based on an inappropriate reevaluation of GTECH's protest. *See, e.g.,* Brief for SGI at 12.

wealth. *See id.* Finally, the letter observed that "the RFP was not cancelled due to any actions or inactions by [SGI]." *Id.*[9]

Subsequently, SGI commenced an action seeking declaratory and injunctive relief against the Departments of Revenue and General Services in the Commonwealth Court's original jurisdiction and petitioned for a preliminary injunction. SGI invoked the Commonwealth Court's original jurisdiction under Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a) ("The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings ... [a]gainst the Commonwealth government," subject to enumerated exceptions).[10] In detailing the jurisdictional basis for the filing of its claims before the Commonwealth Court, SGI also alluded to Section 521 of the Procurement Code, albeit that Section 521, by its terms, does not establish jurisdiction in any court.

In the substantive averments of the complaint, SGI advanced two counts, both entitled "Violation of 62 Pa. Cons. Stat. § 521 (Declaratory Judgment)." Complaint at 10, 13. SGI alleged that DGS and SGI had executed an enforceable contract, and, therefore, cancellation was not available under Section 521. *See* 62 Pa.C.S. § 521 (establishing the right of best-interests cancellation "at any time prior to the time a

9. Upon such cancellation, GTECH discontinued its appeal without prejudice.

10. One of the specified exceptions pertains to "actions or proceedings conducted pursuant to the act of May 20, 1937 (P.L. 728, No. 193), referred to as the Board of Claims Act." 42 Pa.C.S. § 761(a)(1)(iv) (footnote omitted). The Board of Claims Act, however, has been repealed and replaced by the salient provisions of the Procurement Code. *See* Act of December 3, 2002, P.L. 1147, No. 142, § 21.

Notably, however, this Court has held that Section 761(a) did not "repeal, modify, or supplant the jurisdiction" of the Board of Claims. *Ezy Parks v. Larson*, 499 Pa. 615, 626–28, 454 A.2d 928, 934–35 (1982) (quoting, indirectly, *Clark v. PSP*, 496 Pa. 310, 314, 436 A.2d 1383, 1385 (1981)). In so determining, the Court reasoned that the General Assembly's salient intent was made manifest by its characterization of the Board of Claims' jurisdiction as "exclusive," in the Board of Claims Act. *See id.* Since the Legislature has also couched the Board of Claims' jurisdiction over specified matters as "exclusive" in the Procurement Code, 62 Pa.C.S. § 1724(a), Section 761 of the Judicial Code also does not repeal, modify, or supplant such jurisdictional grant.

contract is executed by all parties"). To the extent the contract was not executed by all necessary persons, parties, or entities, SGI asserted, DGS's cancellation was unauthorized, arbitrary, and capricious. In this regard, it was SGI's position that the cancellation derived from a meritless and abusive protest pursued by GTECH, and that the cancellation plainly was not in the best interests of the Commonwealth in any event, given SGI's superior and more cost-efficient proposal. The complaint requested, *inter alia*, that the Commonwealth Court enter an order requiring the Commonwealth to honor its "contractual obligations" on the "terms and conditions" to which SGI and the Commonwealth allegedly agreed. Complaint at 13–14. In terms of injunctive relief, SGI also sought an order restraining the Department of Revenue and DGS from cancelling the alleged contract and initiating rebidding.

GTECH intervened in the proceedings before the Commonwealth Court, and both it and the Commonwealth agencies involved filed preliminary objections. Among other things, these asserted that SGI's claims sounded in contract and fell within the exclusive jurisdiction of the Board of Claims. According to the Commonwealth agencies and GTECH, SGI's assertion of a statutory violation (of Section 521) was obfuscatory, in that the complaint hinged on contract execution. *See, e.g.*, Brief of GTECH in Support of Its Preliminary Objections in *Scientific Games Int'l, Inc. v. Dep't of Revenue*, 34 A.3d 307 (Pa.Cmwlth.2011) (No. 380 MD 2011), at 9 (asserting that "only if SGI had an enforceable and fully executed contract with the Commonwealth could DGS possibly have violated Section 521 of the Procurement Code when it cancelled the RFP and award," since Section 521 only permits cancellation prior to execution of a contract by all parties). In this regard, the Commonwealth agencies and GTECH stressed that long-standing decisions of this Court establish that the Board of Claims has exclusive jurisdiction to decide claims arising from Commonwealth contracts, including the threshold question of whether an enforceable contract actually exists in the first instance. *See Shovel Transfer & Storage, Inc. v. Simpson*,

523 Pa. 235, 239–40, 565 A.2d 1153, 1155 (1989).[11] While these litigants recognized that such cases were decided under the former Board of Claims Act, they urged that their rationale applied equally under the Procurement Code and observed that the Commonwealth Court had so held. *See, e.g., New Foundations, Inc. v. DGS*, 893 A.2d 826, 830 (Pa.Cmwlth.2005) (Collins, P.J.) ("[W]e find no suggestion that the holding [that the Board of Claims has jurisdiction over all contractual claims, regardless of the relief requested or the ability of the Board to grant the requested relief] has been modified by later caselaw or statutory changes.").

SGI's response to these contentions is summarized in its responsive brief as follows:

SGI claims that DGS acted beyond its statutory authority in seeking to cancel supposedly in the best interests of the Commonwealth a Request for Proposals and contract award after the execution of the contract document and resolution of a bid protest. These claims fall squarely within the Court's original jurisdiction under Section 761 of the Judicial Code and the Declaratory Judgment Act....

\* \* \*

SGI's claims do not sound in assumpsit. It also does not claim that the Agencies have violated any specific terms of the contract, or seek an interpretation of any contract term or provisions. Rather, ... SGI[ ] seeks to enforce rights

11. *See also Shovel Transfer*, 523 Pa. at 240, 565 A.2d at 1155 ("We have construed the language of the enabling statute to mean that the Board of Claims is empowered to entertain *all contractual claims* against the Commonwealth irrespective of the type of relief sought or the fact that the Board of Claims may not have the power to grant the relief requested." (emphasis in original; citations omitted)); *id.* ("[W]e hold that the Board of Claims has jurisdiction to determine whether a contract has been 'entered into' for purposes of the Act."); *XPress Truck Lines, Inc. v. PLCB*, 503 Pa. 399, 407–08, 469 A.2d 1000, 1004 (1983); *accord Tri–State Asphalt Corp. v. PennDOT*, 135 Pa.Cmwlth. 410, 416, 582 A.2d 55, 57 (1990) ("Our Supreme Court has held that the exclusive jurisdiction of the Board of Claims cannot be avoided by filing in this court an original jurisdiction action to enjoin termination of the contract." (citing *Ezy Parks v. Larson*, 499 Pa. 615, 454 A.2d 928 (1982), and *Emergency Med. Servs. Council of Nw. Pa., Inc. v. Dep't of Health*, 499 Pa. 1, 451 A.2d 206 (1982))).

accruing as a result of the limited authority granted under Section 521 of the Procurement Code to cancel a procurement in the best interests of the Commonwealth.

SGI's Brief in Opposition to Defendants/Respondents' Preliminary Objections in *Scientific Games Int'l, Inc. v. Dep't of Revenue,* 34 A.3d 307 (Pa.Cmwlth.2011) (No. 380 MD 2011), at 1, 16. SGI also cited *GTECH Corp. v. Dep't of Revenue,* 965 A.2d 1276 (Pa.Cmwlth.2009), for the proposition that, when statutory law does not provide a remedy, equity will intervene to fashion one. *See id.* at 1286.

In a published decision, a Commonwealth Court panel overruled the preliminary objections. *See Scientific Games Int'l, Inc. v. Dep't of Revenue,* 34 A.3d 307 (Pa.Cmwlth.2011).[12] On the jurisdictional issue, the panel acknowledged that a long line of this Court's decisions recognized broad, exclusive jurisdiction in the Board of Claims to hear and decide all claims against the Commonwealth arising from contracts entered into with the Commonwealth. *See id.* at 311–12 (citing *Shovel Transfer,* 523 Pa. 235, 565 A.2d 1153). The panel highlighted, however, that such cases were decided under the Board of Claims Act, which was repealed in connection with 2002 amendments to the Procurement Code. *See id.* at 312–13; *see also supra* note 10. The panel then observed that, although the new provisions were in many ways similar to the former Board of Claims Act, the 2002 law differed in one important respect, namely, it prescribed that "[n]othing in this section shall preclude a party from seeking nonmonetary relief in another forum as provided by law." 62 Pa.C.S. § 1724(d). Invoking this provision *sua sponte* and applying it broadly, the panel posited that "the added language ... provides that a party is not precluded from bringing an action in another forum if monetary relief is not sought." *Scientific Games,* 34 A.3d at 313. The panel concluded:

12. Separately, however, the court denied the petition for a preliminary injunction via a single judge order. That decision was affirmed by this Court on later appeal. *See Scientific Games Int'l, Inc. v. Dep't of Revenue,* 616 Pa. 436, 48 A.3d 1230 (2012) *(per curiam ).*

Because Scientific Games is only seeking to validate the contract between it and DGS and is not seeking monetary damages, DGS' and GTECH's preliminary objection that Scientific Games' complaint fails for failure to bring the matter before the Board of Claims pursuant to 62 Pa.C.S. § 1724(a) is overruled. Scientific Games is correct that pursuant to [the Declaratory Judgments Act,] 42 Pa.C.S. § 7532, "[c]ourts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Consequently, this Court has jurisdiction to hear this matter pursuant to 62 Pa.C.S. § 1724(d) and the Declaratory Judgments Act.

*Id.*

The Commonwealth Court panel recognized that the Procurement Code provides a procedure for those who have attained contractor status to assert claims. *See* 62 Pa.C.S. § 1712.1. According to the panel, however, the availability of this administrative remedy cannot impede access to the Commonwealth Court's original jurisdiction to seek nonmonetary relief, since "[t]hat reading ... would make Section 1724(d) of the Procurement Code meaningless in that it provides that a party is not precluded from bringing an action in another forum to seek 'nonmonetary relief in another forum.'" *Scientific Games,* 34 A.3d at 314.

The panel also acknowledged that SGI's complaint, in effect, sought specific performance of the asserted contract with the Commonwealth, *see id.* at 308, and that this Court has long held that specific performance generally is not available as a remedy against the Commonwealth government. *See, e.g., XPress Truck Lines, Inc. v. PLCB,* 503 Pa. 399, 408, 469 A.2d 1000, 1004 (1983). Again, however, the panel interpreted the relevant holding as pertinent only to the former Board of Claims Act. The panel reasoned that the previous precedent did not apply:

because the Board of Claims Act ... has been repealed and, among other things, the General Assembly in Section 1724(d) of the Procurement Code allowed a party to bring

an action involving a state contract seeking relief for non-monetary claims, which would necessarily include specific performance. Of course, courts have discretion whether to grant specific performance of the contract.

*Scientific Games*, 34 A.3d at 315. Notably, the Commonwealth Court did not address the Procurement Code's prominent reaffirmation of sovereign immunity. *See* 62 Pa.C.S. § 1702.

■ Reargument was requested, which the Commonwealth Court refused; however, per Appellants' request, the panel ultimately certified its order for interlocutory appeal. This Court granted Appellants' petitions for permission to appeal centered on the jurisdictional question, while allowing the Board of Claims to file an *amicus* brief, which it has done.[13] The jurisdictional issue is one of law, over which our review is plenary. *See Mercury Trucking, Inc. v. PUC*, 618 Pa. 175, 193–94, 55 A.3d 1056, 1067 (2012).

### C. Arguments

In the briefing, Appellants maintain that the longstanding decisional law interpreting the Board of Claims Act (for example, the *Shovel Transfer* and *XPress Truck* opinions) pertains equally to the Procurement Code, and that, under such caselaw, the parties' factual dispute as to the existence of a contract belongs exclusively before the Board of Claims. Appellants observe that Section 1724(a)(1) of the Procurement Code is "substantively identical" with the core jurisdictional prescription of the former Board of Claims Act, and that this Court has continued to recognize the Board of Claims' "expansive jurisdiction to decide disputes concerning contracts involving the Commonwealth" in cases decided post-amendment. *Empr's Ins. of Wausau v. PennDOT*, 581 Pa. 381, 389 n. 7, 393, 865 A.2d 825, 830 n. 7, 833 (2005). Such jurisdiction, Appellants highlight, has historically included the power to

---

**13.** In April 2012, SGI also filed a claim with the Board of Claims seeking both monetary and nonmonetary relief, which has been stayed, apparently pending this decision. *See* Order of May 29, 2012 in *Scientific Games Int'l, Inc. v. DGS*, No. 4036 (Bd.Claims).

decide whether a contract exists in the first instance. *See supra* note 11; Brief for Dep't of Rev. & DGS at 13 ("[B]oth this Court and the Commonwealth Court (with the exception of the decision at issue here) have fully embraced the concept that the Board of Claims is the appropriate forum to address *all* contract actions, including those where the existence of a contract is at the heart of the controversy, even subsequent to the enactment of § 1724(d).").

It is Appellants' position that Section 1724(d) changed nothing in this regard, but rather, merely protected the status quo relative to express and specific statutory remedies and procedures "as provided by law." 62 Pa.C.S. § 1724(d). In the absence of an express and specific provision, Appellants contend that Section 1724(d) simply does not apply. *Accord New Foundations*, 893 A.2d at 829–30.

Appellants explain that the requirement of an express and specific provision conferring jurisdiction is consonant with the Legislature's clear desire for sovereign immunity to apply in the Procurement Code setting, except as otherwise specifically provided. *See* 1 Pa.C.S. § 2310; 62 Pa.C.S. § 1702. In this regard, Appellants elaborate extensively on the interrelationship between sovereign immunity and attendant constraints on Commonwealth Court jurisdiction. *Accord XPress Truck*, 503 Pa. at 407–08, 469 A.2d at 1004 (explaining that the judicial decisions enforcing the limitations on the Commonwealth Court's jurisdiction to redress contract breaches involving a Commonwealth agency "are founded on the legislature's delegation of exclusive jurisdiction to hear contractual matters involving the Commonwealth to the Board of Claims, and the nature of that statute as a limited waiver of sovereign immunity"). According to Appellants, Section 1724(d) does not, by itself, constitute a specific waiver sufficient to provide for new causes of action where none previously existed. *See, e.g.,* Brief for Dep't of Rev. & DGS at 16 ("This provision was not intended to, and by its plain language does not, create new jurisdiction or relief in any other forum, nor does it purport to overturn existing case law concerning a court['s] ability to

order specific performance or mandatory injunctions.").[14] In this regard, they stress, relative to the Procurement Code, that sovereign immunity has been waived only relative to the protest, claims, and Board–of–Claims procedures specified in the Procurement Code. *See* 62 Pa.C.S. § 1702(b). Thus, it is Appellants' position that, for jurisdiction of claims *against the Commonwealth* to be cognizable in judicial venues, a legislative waiver of sovereign immunity must be found elsewhere to pertain. Appellants observe, however, that neither the Commonwealth Court panel nor SGI has identified any such waiver provision.

In terms of Section 521, Appellants maintain that it confers no rights whatsoever upon offerors such as SGI but, rather, merely permits the Commonwealth to cancel procurements. Indeed, Appellants note, the Procurement Code expressly removes from the protest procedure any right to challenge the cancellation of requests for proposals. *See* 62 Pa.C.S. § 1711.1(a). Appellants regard SGI's equity action as, essentially, an effort to make an end run around such express legislative intentions.[15] In this regard, Appellants' arguments also suggest that, had the General Assembly intended to accomplish an act as profound as upsetting the long-established understanding that specific performance is not available against the Commonwealth, it would have done so in terms clearer and more specific than the mere reservation that nothing in the jurisdictional provision pertaining to the Board of Claims precludes nonmonetary relief in another forum as provided by law. *See id.* § 1724(d).

14. As one example, the Department of Revenue and DGS cite the statutory allocation of jurisdiction to the Board of Property to "hear and determine cases involving the title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth." 71 P.S. § 337.

15. GTECH also complains, correctly, that the Commonwealth Court discussed only the review standard applicable to a demurrer; whereas, several of Appellants' preliminary objections were couched in other terms. *See, e.g.,* Brief for GTECH at 11–12. The panel's misapplication in this regard, however, has no bearing on our legal assessment of the jurisdictional question presented here.

In its brief, SGI adopts the Commonwealth Court panel's position that jurisdiction was proper under Section 1724(d). *See, e.g.,* Brief for SGI at 16 ("On its face, Section 1724(d) preserves parties' ability to invoke any grants of jurisdiction to any other tribunal that would extend to contract actions against Commonwealth agencies for nonmonetary relief."). In terms of the general grant of exclusive jurisdiction to the Board of Claims contained in Section 1724(a), SGI draws a distinction between "claims" and "issues," positing that exclusive jurisdiction attaches to the former but not the latter. *See id.* ("By its express terms, Section 1724(a) confers jurisdiction upon the Board of Claims with respect to 'claims,' not issues."). While recognizing that the Board of Claims' exclusive jurisdiction attaches to "claims arising from" contracts with Commonwealth agencies, SGI contends that such jurisdiction does not necessarily attach where a litigant merely raises "an issue as to a Commonwealth agency contract." *Id.* (internal quotation marks omitted).

In this regard, SGI relies on the following statement from *Keenheel v. Commonwealth,* 523 Pa. 223, 565 A.2d 1147 (1989): "The jurisdiction of the Board of Claims is not triggered simply because a contract may be involved in an action, rather the jurisdictional predicate is satisfied only when the claimant relies upon the provisions of that contract in asserting the claim against the Commonwealth." *Id.* at 227–28, 565 A.2d at 1149. Describing its own claims as "statutory" and "non-contract based," Brief for SGI at 18–19, SGI maintains that they fall outside the Board of Claims' exclusive jurisdiction. According to SGI, the substantive basis of its claims is "the limitations the Procurement Code imposes upon the Agencies [per Section 521], not rights arising under the contract." *Id.* at 19. SGI elaborates as follows:

> In the instant action, to the extent any issue is raised as to whether the contract was executed, it is subsidiary to the primary issue of whether DGS exceeded its statutory authority. SGI argues that [the Commonwealth agencies] exceeded their authority under Section 521 because they attempted to cancel after execution of the contract. This

argument raises an issue of what constitutes 'execution' as that term is utilized in Section 521, not under traditional common contract formation principles.

Brief for SGI at 21; *accord id.* at 15 ("To the extent any contract issues are presented, they are subsidiary to the primary issue of whether the Agencies exceeded their statutory authority and may be addressed by the Commonwealth Court ancillary to its jurisdiction over the claims asserted.").

It is SGI's position that the resolution of "these statutory issues" falls squarely within the Commonwealth Court's original jurisdiction under Section 761(a) of the Judicial Code and the Declaratory Judgments Act. *Id.* at 19. Indeed, SGI contends, "[r]esponsibility for assuring that procurements proceed in accordance with law is vested in the Commonwealth Court either pursuant to its jurisdiction over protest appeals, 62 [Pa.C.S.] § 1711.1(g), or unquestioned authority to resolve taxpayer challenges to a procurement." *Id.* at 20. Citing *GTECH Corp. v. Department of Revenue,* 965 A.2d 1276 (Pa.Cmwlth.2009), SGI also relies on the precept that "[w]here the law has created a legal right but not a remedy, equity will intervene to fashion a remedy." *Id.* at 1288 (footnote omitted). In terms of remedy, contrary to the Commonwealth Court's understanding of its claims, SGI indicates that it does not seek specific performance but, rather, merely demands that the Procurement Code be enforced.

SGI's brief proceeds to an examination of the specific terms of Section 1724(d), which it describes as "broadly and generically phrased" and as lacking in words of exclusion. Brief for SGI at 23–24. SGI reasons that such features convey that the Legislature meant the provision to be interpreted very broadly, to encompass all jurisdictional grants in other tribunals relative to nonmonetary relief, whether they may be specific, express, general, or indirect. *See id.* at 23. In this regard, SGI highlights that Section 1724(d) does not contain the words "expressly" or "specifically," and it challenges Appellants' approach as an inappropriate attempt to superimpose such terms upon the statute. *Id.* at 26.

In terms of sovereign immunity, SGI regards the doctrine as irrelevant, since the General Assembly provided an exception, in Section 1702(b) of the Procurement Code, for "claims against Commonwealth agencies brought in accordance with . . . Subchapter C (relating to Board of Claims)." 62 Pa.C.S. § 1702(b) (footnote omitted). In this regard, SGI highlights that Section 1724(d)'s reservation of jurisdiction in other tribunals relative to nonmonetary relief falls within subchapter C. Alternatively, SGI notes that sovereign immunity generally has been applied to foreclose the award of mandatory, but not prohibitive, injunctions. *See, e.g., Fawber v. Cohen,* 516 Pa. 352, 359–60, 532 A.2d 429, 433–34 (1987) (citing *Phila. Life Ins. Co. v. Commonwealth,* 410 Pa. 571, 576, 190 A.2d 111, 114 (1963)). SGI relates that it only wishes to restrain state officials from "further violations of Section 521 and 1711.1 of the Code." Brief for SGI at 31. Finally, to the extent that the Commonwealth may be immune from any of SGI's claims or prayers for relief, the company contends that the Commonwealth Court still could grant those remaining claims that do not implicate immunity.

In its *amicus* brief, the Board of Claims does not squarely take a position on the jurisdictional question presently before us. *See, e.g.,* Brief for *Amicus* Board of Claims at 8 ("[T]he Commonwealth Court may arguably issue some type of declaratory judgment (e.g. a declaration of the existence of a contract or some other relationship among the parties) and may even be able to enjoin performance of such contract[.]"). Rather, the Board of Claims asks for a broad-based holding that the Procurement Code preserved "200 plus years of history, public policy and case law surrounding Commonwealth contract claims," and did not alter or diminish the Board of Claims' jurisdiction, except as explicitly enumerated in "two minor areas (i.e. by eliminating Board jurisdiction over medical assistance claims and allowing for nonmonetary relief, *excluding specific performance,* on state contract claims before the Commonwealth Court)." *Id.* at 1 (citing 62 Pa.C.S. § 1724(c), (d)). In terms of its main request, the Board of Claims centers a substantial portion of its presentation on the

question of whether the amendments to the Procurement Code reconstituting the tribunal narrowed its jurisdiction only to claims for breaches of *procurement* contracts. *See generally Hanover Ins. Co. v. SWIF*, 35 A.3d 849, 856 (Pa.Cmwlth. 2012) (en banc) (holding, consistent with the Board of Claims' position, that "the provisions of the Procurement Code have not altered or limited the exclusive jurisdiction" of the independent administrative board over a particular non-procurement matter).[16] The Board of Claims also places particular emphasis on its challenge to the Commonwealth Court panel's determination that Section 1724(d) opens the way for awards of specific performance against the Commonwealth. *See generally Phila. Life*, 410 Pa. at 576, 190 A.2d at 114 ("Suits which seek to compel affirmative action on the part of state officials or to obtain money damages or to recover property from the Commonwealth are within the rule of immunity." (emphasis added)).

## II. Discussion

 As noted, we are presented with issues of statutory construction, as to which our task is to determine the intent of the Legislature. The language of the statute at issue (here, the Procurement Code) is the primary guide. *See* 1 Pa.C.S. § 1921(a), (b). Where ambiguities exist, we may resort to principles of construction, including, among other considerations, evaluation of the occasion and necessity for the statute under review, the object to be attained, and the consequences of the particular interpretation. *See id.* § 1921(c)(1), (4), (6).

---

16. As the present matter does involve a procurement dispute, however, we are unable to accede to the Board of Claims' request to broadly settle the jurisdictional landscape. *See, e.g., Oliver v. City of Pittsburgh*, 608 Pa. 386, 395, 11 A.3d 960, 966 (2011) (reiterating the axiom that judicial holdings are to be understood in light of their factual underpinnings). At most, we will say that the Commonwealth Court's *en banc* decision in *Hanover* remains the prevailing law of Pennsylvania unless and until the position is reviewed by this Court. Additionally, the Board of Claims and other litigants and *amici* are certainly free to rely on aspects of our reasoning here which are supportive of their positions in future presentations in matters implicating jurisdictional aspects more salient to the Board of Claims' concerns.

## A. Sovereign Immunity and Section 1724(d)

We begin with the doctrine of sovereign immunity, because we agree with Appellants that it plays an important role under the Procurement Code, which is designedly structured to accord immunity, subject only to specific and limited exceptions. *See* 62 Pa.C.S. § 1702.[17] For the following reasons, SGI's position that the exception (or waiver of sovereign immunity) associated with "claims against Commonwealth agencies brought in accordance with ... Subchapter C (relating to Board of Claims)," *id.* § 1702(b) (footnote omitted), extends—via Section 1724(d)—to actions in the Commonwealth Court is not a creditable one.

■ One core subcomponent of SGI's argument is that, because Section 1724(d) resides in Subchapter C of the Procurement Code, *claims brought in accordance with Section 1724(d)* are also claims brought "in accordance with ... Subchapter C." *Id.* § 1702(b). Thus, the argument follows, such claims are subject to the salient Section 1702(b) waiver of sovereign immunity. One main difficulty with this position,

**17.** Notably, in *Shovel Transfer*, this Court unequivocally indicated that "at common law sovereign immunity barred a claimant from asserting a claim against the Commonwealth based upon contract[.]" *Shovel Transfer*, 523 Pa. at 240, 565 A.2d at 1155 (citation omitted). The Legislature obviously was entitled to rely on this clearly-expressed understanding when it subsequently devised the Procurement Code and its internal immunity reaffirmation.

As an aside, in his dissent in *Hanover Insurance*, then-Judge (now President Judge) Pellegrini cited our decision in *Meyer v. Community College of Beaver County*, 606 Pa. 539, 2 A.3d 499 (2010), for the proposition that "sovereign immunity simply does not apply to contracts." *Hanover Ins.*, 35 A.3d at 861 (Pellegrini, J., dissenting). However, the sovereign immunity available to the Commonwealth per Section 1702 of the Procurement Code and Section 2310 of Title 1 of the Pennsylvania Consolidated Statutes simply was not in issue in *Meyer*. Rather, the decision concerned *local* government immunity, as prescribed in the Political Subdivision Tort Claims Act, *see* 42 Pa.C.S. § 8541 (providing, subject to enumerated exceptions, that "no *local agency* shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person" (emphasis added)). Thus, contrary to Judge Pellegrini's suggestion, *Meyer* in no way conflicts with *Shovel Transfer* on the salient point that *sovereign* immunity extends into the contract arena, unless specifically waived by the General Assembly.

however, is that Section 1724(d) does not itself establish any substantive or jurisdictional basis for a claim. Rather, Section 1724(d) only recognizes that other provisions of law may do so and preserves the independent effect of these other statutes. Along these lines, and at least in the absence of some other words evincing a wider application, a prescription commencing with the phrase "[n]othing in this section shall preclude"—*e.g.*, Section 1724(d)—cannot be read to establish a basis for judicial review or relief broader than that which is contained in the provisions of law which are to be left un-precluded (here, those provisions of law which may independently sanction claims for relief against the sovereign). From this, and since Section 1724(d) also does not itself contain any waiver of sovereign immunity, it follows that such a waiver must be found in (or specifically be associated with) the other, un-precluded provisions of law.[18]

▉ Furthermore, by its own terms, section 1724(d) only operates as a constraint on the effect of *"this section,"* i.e., Section 1724, and, therefore, has no effect on the scope of sovereign immunity as reaffirmed *in a different section* of the Procurement Code, i.e., Section 1702. Indeed, consistent with the above, in fashioning the immunity waiver associated with Subchapter C, the General Assembly characterized such sub-

---

18. We acknowledge SGI's objection to the "insertion" of a specificity requirement into the jurisdictional analysis. On the subject of sovereign immunity, however, the Legislature has memorialized its intent for waivers to arise only from specific statutory language. *See* 1 Pa.C.S. § 2310 (reaffirming sovereign immunity "except as the General Assembly shall *specifically* waive the immunity" (emphasis added)).

We also recognize SGI's position that waivers and/or jurisdictional allocations implicated by Section 1724(d) may be scarce or even nonexistent among the Laws of Pennsylvania, thus suggesting that Section 1724 was meant to be read more broadly. In this regard, however, we have recognized that "in the process of legislative drafting, the General Assembly is faced with a complex landscape of existing statutes, many of which are amenable to differing interpretations by litigants and have yet to be finally interpreted or construed by the courts." *Germantown Cab Co. v. PPA*, 614 Pa. 133, 156–57, 36 A.3d 105, 119 (2012). In crafting an exception for a specific waiver and/or jurisdictional allocation, we do not hold the General Assembly to identifying a specific present or future example, nor do we deem it necessary to look for one, particularly in light of the clear purport of the sovereign-immunity overlay to the Procurement Code.

chapter as "relating to Board of Claims." 62 Pa.C.S. § 1702(b). This is entirely consonant with the understanding that the legislative purpose was to implement such waiver relative to denominated proceedings in the Board of Claims, not other tribunals. *See generally XPress Truck*, 503 Pa. at 407–08, 469 A.2d at 1004 (explaining that the judicial decisions enforcing the limitations on the Commonwealth Court's jurisdiction to redress contract breaches involving a Commonwealth agency "are founded on the legislature's delegation of exclusive jurisdiction to hear contractual matters involving the Commonwealth to the Board of Claims, and the nature of that statute as a limited waiver of sovereign immunity");[19] *New Foundations*, 893 A.2d at 829–30 ("We believe that although Section 1724 recognizes that the legislature could elect to vest another tribunal with jurisdiction, we must interpret it to mean that any such other law must specifically vest jurisdiction in another tribunal.").[20] In other words, as Appellants put it, the exception to sovereign immunity pertaining to Board–of–Claims jurisdiction defines the extent of the Commonwealth's statutory exception from sovereign immunity for claims arising from contract.

 The constitutionally-grounded, statutory doctrine of sovereign immunity obviously serves to protect government policymaking prerogatives and the public fisc.[21] To a degree, it has been tempered to recognize the rights and interests of those who may have been harmed by government actors, and/or, in the contract arena, to remove a substantial disincen-

19. In this regard, nothing in SGI's arguments persuades us that the core teachings of *Shovel Transfer* and *XPress Truck* have been overturned by the Procurement Code, at least as applied in the government procurement setting.

20. SGI highlights, correctly, that *New Foundations* is a single judge opinion, which, under the Commonwealth Court's Internal Operating Procedures, does not serve as binding precedent. *See* IOPs of the Commonwealth Court § 414. The Internal Operating Procedures also recognize that the reasoning in a single judge opinion may have persuasive force, *see id.*, which we find to be the case here.

21. The present immunity scheme is based entirely on the constitutional and statutory law, since this Court has deemed the common-law justifications for sovereign immunity to be invalid. *See Mayle v. Pa. Dep't of Highways*, 479 Pa. 384, 406, 388 A.2d 709, 720 (1978).

tive for private individuals to pursue government contracts. *See generally* Harold J. Krent, *Reconceptualizing Sovereign Immunity*, 45 VAND. L.REV. 1529, 1565 (1992). Understandably, some immunity applications may be distasteful to those who may discern government wrongdoing, or at least unremediated collateral injury to private concerns resulting from governmental policy changes. In light of the constitutional basis for the General Assembly's allocation of immunity, however, the area implicates the separation of powers among the branches of government also crafted by the framers.[22] Thus, in absence of constitutional infirmity, courts are not free to circumvent the Legislature's statutory immunity directives pertaining to the sovereign.

We recognize that some decisions of this Court may suggest that immunity is not squarely a jurisdictional matter. *See, e.g., James J. Gory Mechanical Contracting, Inc. v. PHA*, 579 Pa. 26, 38, 855 A.2d 669, 677 (2004) (distinguishing another decision because it "solely concerned whether [a government agency] was a Commonwealth agency for sovereign immunity purposes rather than for purposes of jurisdiction"). Notably, at the federal level at least, however, sovereign immunity is considered a core jurisdictional concern.[23] The language of

**22.** *Accord* Gregory C. Sisk, *The Continuing Drift of Federal Sovereign Immunity Jurisprudence*, 50 WM. & MARY L.REV. 517, 562 (2008) ("[W]hen civil litigation is an appropriate response to harms caused by governmental activities, which claims are suited for the judicial venue rather than being redressed by legislation or administrative procedures, what types and theories of liability that should be recognized in suits alleging governmental wrongs, and which forms of relief that may be imposed against the government as an entity, are all questions that go to the very core of the concept of sovereign immunity and its grounding in constitutional separation of powers.").

**23.** *See, e.g., FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). *See generally* Sisk, *The Continuing Drift of Federal Sovereign Immunity Jurisprudence*, 50 WM. & MARY L.REV. at 545 ("Because the United States may not be sued without its consent, the existence of a statutory waiver of sovereign immunity is necessarily a jurisdictional inquiry." (footnote omitted)); *id.* at 547–48 ("[W]hether a cognizable claim has been presented that falls within the general boundaries of an express statutory waiver of sovereign immunity and that has been filed in a tribunal with statutory authority over that class of claims presents a nonwaivable question of subject matter jurisdiction in the federal courts.").

the Pennsylvania Constitution itself seems consistent with such perspective, as it relegates to the General Assembly the power to specify the manner and designate the courts in which suits against the Commonwealth may be brought. *See* Pa. Const. art. I, § 11; *cf. U.S. v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941) (reasoning that "the terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit"); *O'Connor v. Pittsburgh,* 18 Pa. 187, 189 (1851) (explaining that immunity "is the prerogative of a sovereign to be exempt from coercion by action; for jurisdiction implies superiority, and a sovereign can have no superior").

 While more general clarification of the relationship between sovereign immunity and jurisdiction may be appropriate in the arena at large, for present purposes, we regard sovereign immunity as a jurisdictional concern vis-à-vis the Procurement Code. Our understanding, in this regard, is premised on the enactment's self-contained reaffirmation of sovereign immunity, *see* 62 Pa.C.S. § 1702(a), and its explicit, limited waiver of such immunity (among other specified and limited waivers) in connection with a coordinate allocation of "exclusive jurisdiction" to the Board of Claims over claims arising from certain contracts entered into by a Commonwealth agency, *see id.* §§ 1702(b), 1724(a)(1). In this respect, we agree with Appellants that—as a matter of jurisdiction—if the General Assembly has not specifically provided by statute for such nonmonetary relief in a claim arising from a contract entered into by a Commonwealth agency under the Procurement Code, then either the claim is within the exclusive jurisdiction of the Board of Claims or it is barred by sovereign immunity.[24] As Appellants argue, this is consistent with the

24. Some of the confusion in the sovereign immunity arena may arise from attempts to conceptualize the relevant considerations as ones of subject matter jurisdiction. While this may be most consistent with the precept that the bar is non-waivable by Commonwealth agencies, *see Tulewicz v. SEPTA,* 529 Pa. 588, 594, 606 A.2d 427, 429 (1992), the concept of sovereign immunity can be regarded as being as much or more in the nature of personal jurisdiction, *see, e.g., Data Gen. Corp. v. Cnty. of Durham,* 143 N.C.App. 97, 545 S.E.2d 243, 245–46 (2001); *cf. Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474,

longstanding public policy, as established under the Board of Claims Act, of broadly channeling contract claims through the Board of Claims, which also remains the initial arbiter of whether a contract exists. *Accord Shovel Transfer,* 523 Pa. at 239–40, 565 A.2d at 1155.[25]

■ Based on the above, we conclude that the Commonwealth Court erred in interpreting Section 1724(d) so broadly as to sanction original jurisdiction actions in a judicial tribunal over nonmonetary claims against the Commonwealth. To the contrary, nonmonetary claims against the Commonwealth are cognizable only to the extent they fall within some "specific[ ]" waiver or exception to immunity. 1 Pa.C.S. § 2310. As explained, no such waiver or exception is found in Section 1724(d) of the Procurement Code, and neither the Commonwealth Court nor SGI has identified any other salient and specific waiver provision within which to bring SGI's claims.

## B. Prohibitive Injunctions and the Role of Equity

■ As noted, SGI argues, in the alternative, that prohibitive injunctions function as an exception to sovereign immunity. *See Fawber,* 516 Pa. at 359–60, 532 A.2d at 433–34. Applying a distinction between prohibitive and mandatory

480 (4th Cir.2005) (observing that federal sovereign immunity "has attributes of both subject-matter jurisdiction and personal jurisdiction"), albeit that the ordinary strain of personal jurisdiction may be waived in the course of litigation, *see Wagner v. Wagner,* 564 Pa. 448, 461, 768 A.2d 1112, 1119 (2001).

**25.** Along these lines, and again in the Procurement Code setting, we find that this enactment has changed nothing to alter the force of the Commonwealth's Court's apt explanation in *Tri–State Asphalt,* as follows:

Th[e] jurisdictional limitation on the power of courts to interfere under the guise of equitable relief in contract disputes with respect to which our General Assembly has vested exclusive jurisdiction in the Board of Claims is a corollary to the principle that contracts with the Commonwealth generally are not subject to specific performance.... It also follows from the fact that, as recognized by the Supreme Court, the General Assembly amended the statute governing jurisdiction of the Board of Claims by inserting the word "exclusive" in order to avoid any implication that [the] Commonwealth Court could have jurisdiction over contract actions against the Commonwealth.

*Tri–State Asphalt,* 135 Pa.Cmwlth. at 416, 582 A.2d at 57–58 (internal citations omitted).

injunctions, however, can be difficult, because the difference is ambiguous and malleable across a wide range of applications.[26] For present purposes, and in terms of the question of statutory construction with which we are presented, we conclude that—in designing a particularized dispute-resolution scheme in the procurement arena overlaid with a reaffirmation of sovereign immunity and an allocation of exclusive jurisdiction to the Board of Claims to resolve contract controversies—the Legislature did not intend to leave the Commonwealth Court with residual jurisdiction to entertain requests for declaratory relief and/or prohibitive or mandatory injunctions against Commonwealth agencies attending the cancellation of solicitations.

 While SGI references the general axiom that equity will fashion a remedy where there otherwise may be none, this principle is not universally applicable in the statutory realm, particularly if it can be determined that the Legislature intended no remedy. *Cf. Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 669–70, 702 A.2d 1038, 1044 (1997) (determining that a particular statutory violation implicated no remedy). Moreover, at least outside the contours of certain well-defined areas, *see, e.g., Fawber*, 516 Pa. at 360, 532 A.2d at 433–34 (distinguishing actions against the Commonwealth in which immunity applies and suits to restrain Commonwealth officers from enforcing provisions of a statute claimed to be unconstitutional), the courts' equitable powers cannot trump sovereign immunity. Additionally, the equity jurisdiction of the courts is

---

**26.** *See, e.g., Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir.2005) ("There is no doubt that determining whether an injunction is mandatory as opposed to prohibitory can be vexing.") (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1006 (10th Cir.2004) (Seymour, J., dissenting)); *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir.1995) (explaining that "[t]he distinction between mandatory and prohibitory injunctions is not without ambiguities or critics"); *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985) (observing that the boundary between mandatory and prohibitory injunctions is often "more semantical than substantive" and that "to order a party to refrain from performing a given act is to limit his ability to perform any alternative act"), *disapproved on other grounds O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349–50 & n. 2, 107 S.Ct. 2400, 2404–05 & n. 2, 96 L.Ed.2d 282 (1987).

not implicated where a matter falls within the exclusive, original jurisdiction of a non judicial tribunal. *See Keenheel,* 523 Pa. at 233, 565 A.2d at 1152.[27] For these reasons, the Commonwealth Court panel was also incorrect in its position that the equitable remedy of specific performance may be pursued against the Commonwealth in a judicial tribunal. *See Scientific Games,* 34 A.3d at 315.[28]

## C. Section 521 and Statutory Versus Contract Claims

Turning to SGI's argument that it is pursuing a statutory violation per Section 521 rather than a contract claim, we find as follows. The Legislature has deliberately excluded Section 521 cancellations from the scope of the right of protest. *See* 62 Pa.C.S. § 1711.1(a) (prescribing that bidders, offerors, and certain others "aggrieved in connection with the solicitation or award of a contract, *except as provided in section 521 (relating to cancellation of invitations for bids or requests for proposals),* may protest to the head of the purchasing agency in writing" (emphasis added)). Neither the Commonwealth Court panel nor SGI has offered a persuasive reason why the Legislature would have wished to foreclose protests to cancellations (which would be subject to the Commonwealth Court's appellate review, *see id.* § 1711.1(g)), while simultaneously sanctioning original jurisdiction actions in the

27. In this regard, as well, we agree with Appellants that the Commonwealth Court panel's and SGI's references to the Declaratory Judgments Act are unhelpful, since this enactment prescribes that "[r]elief shall not be available under this subchapter with respect to any ... [p]roceeding within the exclusive jurisdiction of a tribunal other than a court." 42 Pa.C.S. § 7541(c).

28. The panel based its conclusion on its determination that Section 1724(d) sanctioned such actions. *See Scientific Games,* 34 A.3d at 315. As we have explained, however, Section 1724(d) has the far more modest effect of sanctioning claims against the sovereign which are otherwise specifically provided for by the Legislature. *See supra* Part II.A. Neither the panel nor SGI has identified any relevant, specific provision of law sanctioning an action for specific performance of an asserted procurement contract against the Commonwealth. Finally, nothing in the Commonwealth Court panel opinion suggests that the Procurement Code otherwise has jettisoned the understanding, reflected in *XPress Truck* and elsewhere, that "specific performance generally is not an appropriate remedy for breach of contract by a public body." *XPress Truck,* 503 Pa. at 408, 469 A.2d at 1004.

Commonwealth Court to challenge such cancellations. It is far more plausible, in our view, and consistent with the statutory scheme, that the General Assembly wished to rely on the immunity reaffirmed in the Procurement Code to foreclose these challenges altogether. This approach avoids protracted litigation relative to abandonment of, or re-solicitation for, a public project, when the cancellation is believed by a Commonwealth agency to be in the best interests of the citizenry. *See* 1 Pa.C.S. § 1921(c)(1), (4), (6) (authorizing consideration of the occasion for and object of the statute and consequences of its interpretation in construction of ambiguous statutory provisions).[29]

If a contract between the Department of Revenue and SGI was consummated, the Procurement Code also establishes a remedial avenue through a claim process, subject to review in the Board of Claims. *See* 62 Pa.C.S. § 1712.1. SGI's arguments appear to suggest that there may be some narrow margin between "execution" of a contract, for purposes of Section 521, and attainment of "contractor" status, for purposes of Section 1712.1, and that those with claims falling within that category may invoke the Commonwealth Court's original jurisdiction for redress. In line with our analysis above, we conclude that the Legislature intended the protest,

---

**29.** Again, it is not our task to evaluate the wisdom of the Legislature's decision to immunize cancellation decisions from challenge, nor do we lend our approval to the cancellation of the solicitation (and/or disavowal of a contract) in the present factual scenario. In this regard, there is no doubt that SGI expended substantial time and resources to progress through the presentation of its proposal, through the contract award, and at least to the point of a full agreement as to the terms and conditions of the contract. Even to the extent it is authorized under Section 521 (that is, assuming contract execution did not occur), cancellation in the circumstances is obviously troublesome. Indeed, in another cancellation scenario, this author and Messrs. Justices Nigro and Baer favored the affordance of a remedy on a different theory than has been pursued in the present appeal. *See DGS v. On–Point Tech. Sys., Inc.*, 582 Pa. 291, 292–95, 870 A.2d 873, 873–75 (2005) (Saylor, J., concurring and dissenting) (advocating upholding a finding by the Board of Claims of a breach by a Commonwealth agency of an agreement to negotiate in good faith).

Above, we conclude only that the design of the Procurement Code evidences the legislative intent to immunize cancellation decisions within the scope of Section 521.

claims, and review procedures it prescribed to be the exclusive avenues available to those aggrieved in procurement controversies by a Commonwealth agency.[30] We also agree with Appellants that SGI's styling of its claims as involving a statutory violation as opposed to a contract controversy does not diminish the force of the above analysis. *Accord* Brief for GTECH at 36–37 ("Consistent with the limited waiver of sovereign immunity placing exclusive jurisdiction over claims arising under a contract with the Commonwealth in the Board of Claims, and the long line of case law holding that such jurisdiction necessarily includes the jurisdiction to determine whether a contract even exists, the question whether SGI has a contract with the Commonwealth can be answered only by the Board of Claims.").[31]

30. Notably, this Court was not considering a Section 521 issue when it indicated in *Keenheel* that "the jurisdictional predicate [pertaining to the Board of Claims] is satisfied only when the claimant relies upon the provisions of [a] contract in asserting the claim against the Commonwealth." *Keenheel*, 523 Pa. at 227–28, 565 A.2d at 1149. It is a modest adjustment to *Keenheel* to say that the claims process and the attendant Board-of-Claims review procedure is also implicated when a claimant's core position turns on the fact of a contract or of its "execution" in making the claim. Along these lines, we find it most reasonable to interpret the term "contractor," as used in establishing the remedial procedures under Section 1712.1, as including a participant in a contract with a Commonwealth agency which has been executed by all parties for purposes of Section 521. This interpretation eliminates the narrow window of claimants (as envisioned by SGI) who might otherwise fall between the statuses of bidder or offeror, for Section 521 purposes, and contractor for purposes of Section 1712.1, because they have a contract that is executed by all parties, yet nonetheless which is not fully consummated (including, arguably at least, the situation where the contract is signed by the necessary party but does not have essential legal approvals).

31. Similarly, nothing contained in SGI's arguments distinguishing "claims" versus "issues" persuades us that the Legislature intended to open an avenue for bidders, contractors, or offerors to challenge a cancellation, disavowal of execution, or breach of contract in the Commonwealth Court.

With regard to SGI's invocation of taxpayer status, there is no waiver of sovereign immunity to permit either SGI or any other taxpayer to challenge a Section 521 cancellation on the terms SGI has advanced. SGI is not suing a state official to restrain a constitutional violation, as in the *Fawber* case which it cites. *See Fawber*, 516 Pa. 352, 532 A.2d 429. Rather, it has sued Commonwealth agencies under a statutory

## III. Summary

The Procurement Code establishes administrative processes to address disputes arising in the procurement setting. On account of the doctrine of sovereign immunity, however, contractors, bidders, and offerors have limited recourse and remedies. Relative to controversies in matters arising from procurement contracts with Commonwealth agencies, the Board of Claims retains exclusive jurisdiction (subject to all jurisdictional prerequisites), which is not to be supplanted by a court of law through an exercise of original jurisdiction.

As to challenges to cancellations of solicitations asserted under Section 521 of the Procurement Code, the Legislature did not implement any waiver of sovereign immunity and afforded no remedy to aggrieved bidders and offerors which have not yet entered into an executed contract with a Commonwealth agency. For those attaining the status of contractor—which we find should be deemed to occur at the time a contract is executed by all parties (as that event is also understood for purposes of Section 521)—the remedial procedure is via Section 1712.1, subject to review within the exclusive jurisdiction of the Board of Claims. Our holding in this case is limited to the Procurement Code arena, in which the scenario before us has arisen.

The order of the Commonwealth Court is reversed, and the matter is remanded for dismissal, consistent with this opinion.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justice EAKIN and BAER, Justice TODD and Justice McCAFFERY join the opinion.

regime attended by a specific grant of sovereign immunity and explicit remedial procedures. Again, we find that the Legislature intended to permit recourse to those procedures—and none others—relative to breach of contract, to include disavowal of execution for purposes of Section 521.

Finally, there is no issue before us concerning a Commonwealth agency's failure to abide by the remedial procedures, such as was the case in *GTECH Corp. v. Dep't of Revenue*, 965 A.2d 1276 (Pa.Cmwlth.2009); therefore, our opinion should not be taken, in any fashion, as addressing such scenario.