IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Czop/Specter, Inc.,                          :
            Petitioner                       :
                                             :
      v.                                     : No. 374 M.D. 2015
                                             : Submitted:  November 13, 2015
Commonwealth of Pennsylvania,                :
Department of Transportation,                :
            Respondent                       :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI                    FILED: December 15, 2015


      Before the Court are the preliminary objections of the Department of

Transportation (Department)[1] to the petition for review filed by Czop/Specter, Inc.

---

[1] As this Court has explained:

> Under Pa.R.C.P. No. 1028(a)(1), preliminary objections may be filed to a petition for review, asserting that the court lacks jurisdiction over the subject matter of the action.  In reviewing preliminary objections, all material facts averred in the complaint, and all reasonable inferences that can be drawn from them, are admitted as true.  However, a court need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion.  "Preliminary objections should be sustained only in cases that are clear and free from doubt."

**(Footnote continued on next page…)**

(CSI) in our original jurisdiction under the Declaratory Judgments Act[2] seeking declaratory relief and the award of penalties and attorney fees under Section 3935 of the Procurement Code.[3]

---

**(continued…)**

*Seitel Data, Ltd. v. Center Township*, 92 A.3d 851, 858-59 (Pa. Cmwlth. 2014), *appeal dismissed*, 111 A.3d 170 (Pa. 2015) (citations omitted).

[2] 42 Pa. C.S. §§7531-7541. Section 7533 provides, in relevant part, that "[a]ny person interested under a … written contract … or whose rights, status, or other legal relations are affected by a … contract, … may have determined any question of construction or validity arising under the … contract … and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa. C.S. §7533. Nevertheless, Section 7541(c)(2) states that "[r]elief shall not be available under this subchapter with respect to any … [p]roceeding within the exclusive jurisdiction of a tribunal other than a court." 42 Pa. C.S. §7541(c)(2).

[3] 62 Pa. C.S. §3935. Section 3935 states, in pertinent part:

> **(a) Penalty.**—If … a claim with the Board of Claims or a court of competent jurisdiction is commenced to recover payment due under this subchapter and it is determined that the government agency … has failed to comply with the payment terms of this subchapter, … the Board of Claims or the court may award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was withheld in bad faith. An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious. An amount shall not be deemed to have been withheld in bad faith to the extent it was withheld pursuant to section 3934 (relating to withholding of payment for good faith claims).
>
> **(b) Attorney fees.**—Notwithstanding any agreement to the contrary, the prevailing party in any proceeding to recover any payment under this subchapter may be awarded a reasonable attorney fee in an amount to be determined by the Board of Claims, [or] court … together with expenses, if it is determined that the government agency … acted in bad faith. An amount shall be deemed to have been withheld in bad faith to the extent that the withholding was arbitrary or vexatious.

CSI is a consulting engineering and surveying firm that entered into a number of contracts with the Department to perform inspection services involving High Occupancy Permits. On these projects, entities such as developers, utilities or municipalities would obtain permits so that construction work could occur within the Department's rights-of-way by the permit holders. The Department hires inspectors, such as CSI, to ensure that the work is done according to the applicable legal, contractual or permit requirements which then bill the Department for these services. Under the contracts, CSI was required to have the work of its employees performed under the Department's supervision and direction, and Department personnel approved all CSI invoices prior to any payment. CSI would bill the Department for the services performed, and the Department would then submit those invoices to the permittees to be paid.[4]

In March 2013, a grand jury was convened involving alleged criminal activity of Department management and supervisory personnel. In December 2014, a presentment was released and four former CSI employees and two Department supervisors were charged with various theft and corruption crimes. It was alleged that the Department personnel directed CSI inspectors to inflate

_____

[4] Section 441.6(4)(1)(i) of the Department's regulations states:

> (i) The permittee shall pay all fees, costs, and expenses incident to or arising from the project, including the cost of related highway improvements which increased traffic or surface drainage may necessitate. The permittee shall reimburse the Department for any and all inspection costs within 30 days after receipt of the Department's invoice.

67 Pa. Code §441.6(4)(1)(i).

3

overtime hours, mileage, and to perform work outside the scope of the permitting inspection contracts. The Department supervisors allegedly collected a weekly "street tax" that if not paid would result in the removal of inspectors from Department projects.

In December 2014, the Department sent CSI a Notice of Immediate Suspension which attached the presentment and alleged that the conduct of CSI was cause for future debarment. CSI answered the notice denying that it committed any fraud in its billings and informal conferences ensued. The administrative matter involving the suspension and debarment issues is currently pending before the Department at Docket No. 004 A.D. 2015.

On May 22, 2015, the Department sent CSI an Offset Memorandum[5] indicating that $1,119,423.17 in liability was owed the Department by CSI. (PFR

---

[5] The Offset Memorandum indicated that it was executed in accordance with Management Directive 215.9 which provides, in relevant part:

> **o.** The Offset Provision (Enclosure 2, Offset Provision) shall be included in all contracts requiring the commonwealth to make a payment. The contractor agrees that the commonwealth may offset the amount of any liability of the contractor or its affiliates and subsidiaries that is owed to the commonwealth against any payments due the contractor under this or any other contract with the commonwealth.

(Petition for Review (PFR) Exhibit F3 at 7).

In turn, Enclosure 2, Offset Provision states:

> The Contractor agrees that the Commonwealth of Pennsylvania (Commonwealth) may set off the amount of any state tax liability

**(Footnote continued on next page…)**

4

Exhibit A).  On June 1, 2015, the Department's Deputy Secretary for Highway Administration also notified CSI that a $1,119,423.17 offset would be pursued for "improperly invoiced overtime hours, commute hours, mileage and unqualified personnel." (*Id.* Exhibit B).  The letter stated that "[a]s a result, the Department has formally entered an outstanding obligation to the Commonwealth against your company in that amount under the Contractor Responsibility Program[6] and will

_____

**(continued…)**

> or other obligation of the Contractor or its subsidiaries to the Commonwealth against any payments due the contractor under any contract with the Commonwealth.

(*Id.* at 24).

[6] As alleged, the Contractor Responsibility Program (CRP) was initiated via Executive Order 1990-3, but is now found at 4 Pa. Code §§7.501-7.505, and directs the Secretary of the Budget and the Secretary of General Services to "identify, evaluate and sanction appropriately, contractors that do not meet the standards of responsibility, that render deficient performance, or that engage in wrongdoing…." 4 Pa. Code §7.501.  Pursuant to Sections 321(6) and 327(b) of the Procurement Code, the Department of General Services (DGS) and the Office of the Budget shall participate in the management and maintenance of the CRP.  62 Pa. C.S. §§321(6), 327(b).

Management Directive 215.9, issued by the Governor's Office, establishes policy, responsibilities and procedures for the operation of the CRP applicable "to all departments, boards, commissions, and councils … under the Governor's jurisdiction." (PFR Exhibit F3 at 1). Management Directive 215.9(6)(b) directs the Office of the Budget to participate in the management and maintenance of the CRP in coordination with DGS and other agencies as directed by the Governor and to "[e]nsure that the offset provision is included in all contracts or that a written waiver is attached." (PFR Exhibit F2 at 9).  Likewise, Management Directive 215.9(6)(c) directs DGS to participate in the management and maintenance of the CRP in coordination with the Secretary of the Budget and other agencies directed by the Governor and to "[m]aintain a current list of contractors suspended or debarred by the commonwealth and disseminate such information to agencies and others…." (*Id.*).

Additionally, the Keystone Offset Program (KOP) is an initiative by the Governor's Innovation Council "aimed at collecting delinquent non-tax debt owed to the Commonwealth … by utilizing existing processes to offset delinquent debt against payments in SAP." (PFR Exhibit
**(Footnote continued on next page…)**

5

proceed to recoup that obligation by offsetting it against any payment due your company under any contract or purchase order with the Commonwealth." (*Id.*).

On June 13, 2015, CSI sent the Department an email regarding the offset and the June 1, 2015 letter, stating that "[i]n reviewing the requirements for the offset program, it appears that [the Department]'s claim (which is not a debt or an established amount owed) would not qualify for the offset program. For example, no dunning at all occurred on this alleged claim nor has there been any showing that [CSI] is past due on any obligation." (PFR Exhibit D at 1). As a result, the email concluded, "my client requests that it receive all past due amounts on its projects as soon as reasonably possible." (*Id.*).[7]

---

**(continued…)**

C at 1, 3). In order for a debt to be "KOP eligible," it must be more than 90 days past due; it must have "a dunning level of 1-4;" and it must have been certified as valid by the receiving agency. (*Id.*).

[7] Section 1712.1 of the Procurement Code states, in relevant part:

> **(a) Right to claim.**—A contractor may file a claim with the contracting officer in writing for controversies arising from a contract entered into by the Commonwealth.
>
> **(b) Filing of claim.**—A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer.
>
> **(c) Contents of claim.**—A claim shall state all ground upon which the contractor asserts a controversy exists.

62 Pa. C.S. §1712.1(a)-(c).

On July 2, 2015, the Department's Assistant Counsel replied to CSI's email explaining that the offset was based on express offset provisions in the contracts between the parties,[8] and that its right to an offset "is in no way contractually conditioned on some sort of strict compliance with the terms of the 'Comptroller Operations' document excerpts regarding the 'Keystone Offset Program' that you attached to your email," and that the Department's "exercise of its contractual offset right is likewise not conditioned on its having [sic] engaged in some particular dunning activity or activities." (PFR Exhibit D at 2). The Department withheld $186,558.81 of the total offset to be pursued. (*Id.* Exhibit E).

On July 17, 2015, CSI sent the Department's Secretary "a final appeal for the [Department] to release all fund due to [CSI] which are being withheld due to the pursuit of an offset." (PFR Exhibit F at 1). CSI again alleged that the offset was not implemented in accordance with the requirements of Management Directive 215.9 and the KOP, and that there are no debts to offset with the money that it is owed because the time for filing any claims for work during the period of alleged illegality, from 2010 through 2013, and the Department cannot alter the Procurement Code provisions to revive any future stale claims by permittees. (*Id.* at 1-3).[9]

---

[8] As indicated above, Management Directive 215.9(5)(o) specifically requires that the offset provision stated in Enclosure 2, Offset Provision, be included in any contract with the Commonwealth.

[9] *See* Section 1712.1(b) of the Procurement Code, 62 Pa. C.S. §1712.1(b) ("A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer.").

However, on July 22, 2015, the Department's Acting Deputy Chief Counsel informed CSI:

> With respect to your arguments against the offset, first, the authority for the offset is contractual, founded as it is upon the offset provisions included in the respective [Department]-CSI contracts in question. The offset provisions were included in those contracts pursuant to Management Directive 215.9, relating to the Contractor Responsibility Program. Neither the offset provisions themselves nor the management directive contain any reference to the "KOP" or any language that would in any way support the limitations on the Commonwealth's contractual right of offset that you seem to be suggesting.

> Second, "liability," as defined in the management directive, includes an instance in which "a contractor is not current with the payment of any … monetary amounts owed to the commonwealth or any of its agencies." Reasonably read, this language seems more than broad enough to encompass a situation in which an agency is setting off against current contract payments sums it claims should be refunded because they were paid in response to fraudulently inflated invoices. That is precisely the legal right that [the Department] is asserting here – the right to refund of payments it makes to contractors on the basis of fraudulently inflated invoices. It is telling that in your entire letter requesting a refund of amounts set off by [the Department] to date you have never once suggested that your client did not submit fraudulently inflated invoices or that [the Department] did not therefore make payments to your client in fraudulently inflated amounts.

> For these reasons, [the Department] denies your request that it "release" sums set off to date against contract payments to your client.

(PFR Exhibit G).

8

CSI responded that same day, noting that it has contested the fraudulent activity in its administrative appeal with the Department and expressing disappointment with the Department's breakdown of the amount of purported overbilling. (PFR Exhibit H at 1). CSI also again asserted that an offset was not appropriate because the requirements of Management Directive 215.9 and the KOP have not been met as there are no timely claims against the Department to offset with the monies owed CSI. (*Id.* at 1-2). CSI also noted "that the Secretary has not submitted a response to my client's letter of July 17, 2015. That letter requested a response by [the] close of business of July 22, 2015. As that has not occurred, as the letter references, my client's request has clearly been denied by the agency head." (*Id.* at 2).

On July 28, 2015, CSI filed the instant petition for review[10] asking this Court to: (1) declare that the Department cannot withhold any payments due CSI via an offset because the requirements of Management Directive 215.9 and the KOP have not been met as no present liability exists and any future claim against the Department would be time-barred; (2) declare that the Department must follow Management Directive 215.9 and the Keystone Offset Program if it seeks an offset against CSI; (3) award penalties and attorney fees under Section 3935 of the Procurement Code; and (4) grant any other "just and equitable" relief.

---

[10] Section 1712.1(e) of the Procurement Code provides that "[w]ithin 15 days of the mailing date of a final determination denying a claim or within 135 days of filing a claim if no extension is agreed to by the parties, whichever occurs first, the contractor may file a statement of claim with the board." 62 Pa. C.S. §1712.1(e).

The Department then filed the instant preliminary objections to the petition for review, initially alleging that CSI's claim challenging the Department's offset under the parties' contracts is within the exclusive jurisdiction of the Board of Claims under Section 1724(a)(1) of the Procurement Code[11] and not in this Court's original jurisdiction. Specifically, the Department argues that CSI's claims are either within the exclusive jurisdiction of the Board of Claims or barred by sovereign immunity under the Pennsylvania Supreme Court's opinion in *Scientific Games International, Inc. v. Department of Revenue*, 66 A.3d 740 (Pa. 2013) (*Scientific Games*). We agree that CSI's claims are within the exclusive jurisdiction of the Board of Claims and transfer the matter to the Board.

In *Scientific Games*, DGS, on behalf of the Department of Revenue, issued a request for proposals for the design, development, implementation and maintenance of a computer system to monitor slot machines. The new system was to replace the existing system provided by GTECH Corporation (GTECH) and both GTECH and Scientific Games submitted proposals. Ultimately, DGS awarded the contract to Scientific Games, an agreement on contract terms was reached, and a final draft of the contract was completed but not fully executed by the Commonwealth. DGS later announced that it was cancelling the request for proposals and the award and Scientific Games filed an action in this Court's

_____

[11] 62 Pa. C.S. §1724(a)(1). Section 1724(a)(1) provides that "[t]he board shall have exclusive jurisdiction to arbitrate claims arising from … [a] contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies)." Section 1724(c) states that "[t]he board shall have no power and exercise no jurisdiction over a claim asserted under subsection (a)(1) unless it is filed with the board in accordance with section 1712.1…." 62 Pa. C.S. §1724(c).

10

original jurisdiction seeking declaratory and injunctive relief against DGS and the Department of Revenue. Scientific Games alleged that an enforceable contract had been executed and could not be cancelled under the Procurement Code. As a result, Scientific Games sought specific performance of the contract. GTECH intervened and filed preliminary objections along with DGS and the Department of Revenue alleging, *inter alia*, that Scientific Games' claims sounded in contract and hinged on the execution of the contract and, therefore, were either within the exclusive jurisdiction of the Board of Claims or subject to sovereign immunity.

This Court overruled the preliminary objections. On the jurisdictional issue, we determined that Section 1724(d) applied broadly and did not preclude Scientific Games from bringing an action in this Court where monetary relief was not sought. This Court also noted that Scientific Games' complaint, in essence, sought specific performance of the contract, and that we have long held that specific performance is generally not an available remedy against the Commonwealth, but that Section 1724(d) allowed a party to seek such relief.

However, on appeal, the Supreme Court reversed, explaining:

> While more general clarification of the relationship between sovereign immunity and jurisdiction may be appropriate in the arena at large, for present purposes, we regard sovereign immunity as a jurisdictional concern vis-à-vis the Procurement Code. Our understanding, in this regard, is premised on the enactment's self-contained reaffirmation of sovereign immunity, *see* 62 Pa. C.S. §1702(a), and its explicit, limited waiver of such immunity (among other specified and limited waivers) in connection with a coordinate allocation of "exclusive jurisdiction" to the Board of Claims over claims arising

11

from certain contracts entered into by a Commonwealth agency, *see id.* §§1702(b), 1724(a)(1).[12] In this respect, we agree with Appellants that—as a matter of jurisdiction—if the General Assembly has not specifically provided by statute for such nonmonetary relief in a claim arising from a contract entered into by a Commonwealth agency under the Procurement Code, then either the claim is within the exclusive jurisdiction of the Board of Claims or it is barred by sovereign immunity. As Appellants argue, this is consistent with the longstanding public policy, as established under the [former] Board of Claims Act, of broadly channeling

---

[12] Section 1702 of the Procurement Code provides:

**(a) General Rule.**—The General Assembly under section 11 of Article I of the Constitution of Pennsylvania reaffirms sovereign immunity, and, except as otherwise provided in this chapter, no provision of this part shall constitute a waiver of sovereign immunity for the purpose of 1 Pa. C.S. §2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

**(b) Exception.**—The General Assembly under section 11 of Article I of the Constitution of Pennsylvania does hereby waive sovereign immunity as a bar to claims against the Commonwealth agencies brought in accordance with sections 1711.1 (relating to protests of solicitations or awards) and 1712.1 (relating to contract controversies and Subchapter C (relating to Board of Claims) but only to the extent set forth in this chapter.

62 Pa. C.S. §1702. *See also* Pa. Const. art. I, §11 ("Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."); 1 Pa. C.S. §2310 ("Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity. When the General Assembly specifically waives sovereign immunity, a claimant against the Commonwealth and its officials and employees shall be brought only in such manner and in such courts and in such cases as directed by the provisions of Title 42 (relating to judiciary and judicial procedure) or 62 (relating to procurement) unless otherwise specifically authorized by statute.").

contract claims through the Board of Claims, which also remains the initial arbiter of whether a contract exists.

*Scientific Games*, 66 A.3d at 756 (citations and footnotes omitted).

Based on the foregoing, the Supreme Court concluded:

The Procurement Code establishes administrative processes to address disputes arising in the procurement setting. On account of the doctrine of sovereign immunity, however, contractors, bidders, and offerors have limited recourse and remedies. Relative to controversies in matters arising from procurement contracts with Commonwealth agencies, the Board of Claims retains exclusive jurisdiction (subject to all jurisdictional prerequisites), which is not to be supplanted by a court of law through an exercise of original jurisdiction.

…For those attaining the status of contractor—which we find should be deemed to occur at the time a contract is executed by all parties … —the remedial procedure is via Section 1712.1, subject to review within the exclusive jurisdiction of the Board of Claims. Our holding in this case is limited to the Procurement Code arena, in which the scenario before us has arisen.

*Id.* at 760.

In this case, it is undisputed that the controversy relates to the Department's use of an offset to withhold payments that are purportedly due to CSI under the contracts between the parties.[13] Under *Scientific Games*, CSI may only

___

[13] *See* Footnotes 5, 8 *supra*.

seek a remedy in the Board of Claims to recover any sums purportedly due under the contracts, along with the award of penalties and attorney fees under Section 3935 of the Procurement Code, and may not rely upon an action in this Court's original jurisdiction to do so. Additionally, the General Assembly has not waived sovereign immunity with respect to such an action in our original jurisdiction and has not specifically preserved any right for declaratory or injunctive relief under Section 1724(d) of the Procurement Code. Moreover, as outlined above, CSI perfected the Board's jurisdiction to provide such a remedy under the Procurement Code by fulfilling the requirements of Section 1712.1 through submitting a timely protest with the Department and by timely filing the instant petition for review in this Court. As a result, this matter is properly transferred to the Board of Claims for disposition.[14]

---

[14] *See Tallada v. East Stroudsburg University of Pennsylvania*, 724 A.2d 427, 428 (Pa. Cmwlth. 1999) ("[U]pon determining that Tallada's contract claim fell within the jurisdiction of the Board of Claims, the trial court should have transferred this claim to the Board of Claims pursuant to section 5103 of the Judicial Code, 42 Pa. C.S. §5103…."); 42 Pa. C.S. §5103(a) ("If an appeal or other matter is taken to or brought in a court … of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court … shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court …. of this Commonwealth….").

14

Accordingly, the Department's preliminary objection is sustained and CSI's petition for review is transferred to the Board of Claims.[15]

_____

DAN PELLEGRINI, President Judge

---

[15] Based upon our disposition of this preliminary objection, we will not reach any other remaining preliminary objections.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Czop/Specter, Inc.,              :
         Petitioner        :
                        :
        v.             : No. 374 M.D. 2015
                        :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
         Respondent   :

# **O R D E R**

AND NOW, this 15th day of December, 2015, the preliminary objection of the Commonwealth of Pennsylvania, Department of Transportation, is sustained and the petition for review filed by Czop/Specter, Inc. is transferred to the Board of Claims.

Jurisdiction is relinquished.

_____
DAN PELLEGRINI, President Judge